STATE OF NORTH CAROLINA, EX REL. UTILITIES COMMISSION AND CAROLINA COACH COMPANY v. SOUTHERN COACH COMPANY

No. 7310UC721

(Filed 24 October 1973)

1. **Carriers § 2; Utilities Commission § 3— common carrier route — relocation — burden of proof — Utilities Commission rule**

   Utilities Commission rule requiring an applicant seeking to relocate a common carrier franchise route over a new highway to show only "that the proposed route, as it now exists and with future improvements, will provide a much safer, quicker and improved service" is a sound and proper rule.

2. **Carriers § 2; Utilities Commission § 3— relocation of bus route — sufficiency of evidence**

   The evidence supported a finding by the Utilities Commission that an applicant's proposed relocation of a bus route between Raleigh and Durham will provide a fast, comfortable and safer ride for pas-

sengers traveling between the two cities to the benefit of both the traveling public and the carrier, and the finding supported the Commission's decision approving the application for relocation of the bus route.

**3. Carriers § 2; Utilities Commission § 3— common carrier — new routes — burden of proof**

A common carrier seeking franchise authority to establish new routes has the burden of proof to satisfy the Utilities Commission that public convenience and necessity require its proposed service in addition to existing authorized transportation service within the meaning of G.S. 62-262 (e) (1).

**4. Carriers § 2; Utilities Commission § 3— common carrier — new route — need for commuter service**

Evidence of a need for local bus service to carry passengers to and from work does not establish the need for a new common carrier franchise route since commuter service is excluded from the coverage of the motor carriers statute and is not regulated by the Utilities Commission. G.S. 62-270 (7).

**5. Carriers § 2; Utilities Commission § 3— establishment of new bus routes**

The Utilities Commission is not required to establish new bus routes for the benefit of three persons a day.

**6. Carriers § 2; Utilities Commission § 3— common carrier — new bus route — harm to existing carrier**

In this proceeding upon the application of a common carrier of bus passengers for authority to establish a route between two cities, there was substantial evidence to support a finding by the Utilities Commission that in order to provide the present service between the two cities, an existing carrier must continue to carry its present passengers and that any substantial decrease in its passenger traffic could result in the curtailment of the present service contrary to the public interest, and such finding supported the Commission's determination that the applicant failed to carry its burden of proving that public convenience and necessity require that it be granted its proposed route.

**7. Carriers § 2; Utilities Commission § 3— interchange agreement — order to two carriers — absence of notice and hearing**

The Utilities Commission had no authority to enter an order directing two bus companies to "renegotiate an equitable equipment interchange agreement to provide passengers through service without a change of coaches between Durham and Wilmington" where the Commission issued its directive without any notice or hearing. G.S. 62-262 (j).

APPEAL by Southern Coach Company from final order of the North Carolina Utilities Commission dated 29 June 1973.

This appeal involves two applications before the North Carolina Utilities Commission, one filed by Carolina Coach Com-

pany (hereafter referred to as "Carolina") and the other by Southern Coach Company (hereafter referred to as "Southern") for common carrier franchise authority to transport passengers by bus. Both applications relate to franchise routes between Raleigh and Durham and through the Research Triangle area, and each applicant is protesting the application of the other carrier.

Carolina has been providing bus service between the cities of Raleigh and Durham since 1925. As new highways have been built and existing highways relocated or improved, it has obtained additional franchise routes between the two cities and intermediate points including the Research Triangle area. Carolina is now authorized to operate over U. S. Highway 70 between the two cities, and also over a route which begins in Raleigh and proceeds over relocated N. C. Highway 54 to I-40 and thence over I-40 to its junction with N. C. Secondary Road 1959 near the community of Nelson, and then traverses the Research Triangle area along Cornwallis Road (Durham County Road 1121) to Durham, serving all intermediate points.

Southern has no franchise authority to operate directly between Raleigh and Durham. It does operate from Durham to Holly Springs over N. C. Highway 55, and from Raleigh to Holly Springs over Secondary Roads 1009 and 1152. It has an authorized route from Durham to Wilmington, by way of Holly Springs and Fuquay-Varina, using N. C. Highway 55 and U. S. Highway 421, but it does not operate over this route. It does provide bus service from Wilmington to Raleigh, following its authorized route from Wilmington to Fuquay-Varina, and continuing from Fuquay-Varina into Raleigh over a route leased from Carolina.

In early 1973 the Durham North-South Expressway was completed. It is a modern dual-lane highway beginning in downtown Durham and connecting with Interstate 40 near Nelson. The present application of Carolina is for authority to operate its buses on the Durham North-South Expressway.

The application of Southern is for two new routes. One route begins at Lowes Grove on Southern's existing route from Durham to Holly Springs. It runs eastward on N. C. Highway 54 and connects with the Durham Expressway in the Research Triangle Park. The other route sought by Southern runs from Raleigh to Durham. It begins in Raleigh, proceeds along relocated N. C. Highway 54 and I-40 to the Durham Expressway,

and then along the Durham Expressway into the city of Durham. The first half of this route is the same as Carolina's existing route from Raleigh to Nelson, and the second half is the same route that Carolina is requesting in its present application. Thus, if the Carolina and Southern applications were both granted, Carolina and Southern would have identical routes from Raleigh to Durham.

Until 14 April 1972, Carolina, Southern, and Virginia Stage Lines, Inc., were parties to an equipment interchange agreement under which they jointly operated a route from Wilmington to Danville, Virginia. While the agreement was in effect, passengers could travel from Wilmington to Durham or Danville without changing buses. Virginia Stage Lines terminated this agreement on 14 April 1972, and it has never been renegotiated by Carolina and Southern.

The Utilities Commission consolidated the two applications and held public hearings on 20 October 1972 and 4 January 1973. On 29 June 1973 the Commission issued an order granting Carolina's application, denying Southern's application, and directing the two companies to "renegotiate an equitable equipment interchange agreement to provide passengers through service without a change of coaches between Durham and Wilmington." Southern appealed to this Court.

*Allen, Steed & Pullen, by Arch T. Allen and Thomas W. Steed, Jr., for plaintiff appellee Carolina Coach Company.*

*Boyce, Mitchell, Burns & Smith, by F. Kent Burns; and Clarence H. Noah, for defendant appellant.*

BALEY, Judge.

Bus companies and other motor carriers in North Carolina are regulated by G.S. 62-259 to -279. G.S. 62-262(a) provides that no company shall provide bus service over any route until the Utilities Commission has granted it a certificate authorizing it to use that route. Under G.S. 62-262(e)(1), before a certificate may be issued, the applicant must satisfy the Commission that "public convenience and necessity require the proposed service in addition to existing authorized transportation service . . . . " *See generally Utilities Comm. v. Coach Co.* and *Utilities Comm. v. Greyhound Corp.*, 260 N.C. 43, 132 S.E. 2d 249.

Under G.S. 62-90 an aggrieved party may appeal a Utilities Commission decision to this Court. G.S. 62-94 provides that on

such an appeal, the Commission's decision is considered "prima facie just and reasonable," and it should be affirmed if supported by substantial evidence. *Utilities Commission v. Coach Co.*, 269 N.C. 717, 153 S.E. 2d 461. Substantial evidence has been defined as "more than a scintilla or a permissible inference." *Utilities Commission v. Trucking Co.*, 223 N.C. 687, 690, 28 S.E. 2d 201, 203. "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). "[I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939). The Commission's decision to grant Carolina's application and reject that of Southern must be judged by this substantial evidence standard.

First, the Carolina application. Carolina did not seek to establish an entirely new route, but only to relocate an existing route. Carolina now operates eighteen round trips daily between Raleigh and Durham. Twelve of these stop at points between the two cities, while six are nonstop. If its application is granted, Carolina intends to reroute its six nonstop trips over Interstate 40 and the Durham North-South Expressway.

[1] The Utilities Commission has developed a special rule for applications that seek only to relocate an existing route over a new highway. In these cases the Commission does not require such an extensive demonstration of public convenience and necessity as in other cases. Instead, the applicant is only required to show "that the proposed route, as it now exists and with future improvements, will provide a much safer, quicker and improved service . . ." Carolina Coach Co., No. B-15, Sub 167, Recommended Order at 4 (Utilities Comm'n Oct. 19, 1971). This is a sound and proper rule. By encouraging bus companies to make use of new and improved highways soon after they are opened, it serves "to promote, in the interest of the public, the inherent advantages of highway transportation" — which is one of the stated purposes of the motor carriers statute. G.S. 62-259.

[2] In this case Aaron Cruise, a vice president of Carolina, testified that U. S. Highway 70, which is the present route for nonstop trips between Raleigh and Durham, traverses an area of increasing development, such as Crabtree Valley Shopping

Center, with reduced speed limits, traffic lights, and congestion, and that the proposed route would be faster, safer, less congested, and more comfortable. He stated further that the change to an improved highway would not result in any reduction in service to the traveling public at the present intermediate points. The Commission found: "[I]t is obvious that the proposed route will provide a fast, comfortable and safer ride for passengers traveling between the cities of Raleigh and Durham to the benefit of both the traveling public and to Carolina Coach Company." Beyond question, the uncontradicted testimony of Cruise is substantial evidence to support the Commission's finding and its decision to approve the Carolina application.

[3] The Southern application is for new routes, not the relocation of existing routes, and is subject to a more stringent standard. Southern has the burden of proof to satisfy the Commission that public convenience and necessity require its proposed service in addition to existing authorized transportation service within the meaning of G.S. 62-262(e) (1).

In *Utilities Commission v. Trucking Co.*, supra at 690, 28 S.E. 2d at 203, the court defined public convenience and necessity as follows:

"It is to be remembered that what constitutes 'public convenience and necessity' is primarily an administrative question with a number of imponderables to be taken into consideration, e.g., whether there is a substantial public need for the service; whether the existing carriers can reasonably meet this need, and whether it would endanger or impair the operations of existing carriers contrary to the public interest."

This definition involves two primary considerations: (1) whether there is a substantial public need for the service which could not be met by existing carriers and (2) whether the proposed service would endanger or impair the operations of existing carriers contrary to the public interest.

Southern contends that there is a public need for its proposed service: (1) to provide local service in the Research Triangle; (2) to establish continuous service between Wilmington and Durham without change of bus in Raleigh; and (3) to reduce its expenses in operating between Raleigh and Durham.

[4] Southern presented several witnesses who testified that there was a need for local bus service in the Research Triangle

area. These witnesses were interested in commuter buses, to carry Triangle employees to work in the morning and home in the afternoon. Commuter service is excluded from the coverage of the motor carriers statute and is not regulated by the Utilities Commission. G.S. 62-260 (7). Either Carolina or Southern is free to establish commuter bus service in the Research Triangle at any time. The record indicates that since the 20 October 1972 hearing, Carolina has taken preliminary steps toward providing this service.

[5] While several witnesses testified they would like continuous service reestablished between Wilmington and Durham without change of bus, the witness Aaron Cruise testified that he had studied Carolina and Southern ticket sales records and found that the average number of passengers traveling south from Durham to Wilmington (or to points on the Raleigh-Wilmington route) was 1.6 per day while the average number traveling north was 1.7 per day. The Utilities Commission is not required to establish new bus routes for the benefit of three persons a day. Southern already has a route from Wilmington to Durham which it could use to provide continuous service between the two cities now. However, Southern has found that it cannot operate this route profitably, and it has used the Wilmington-Raleigh route instead.

[6] As to the reduction in operating expenses, the present franchise authority of Southern authorizes service between Durham and Raleigh only by way of Holly Springs. This is not a direct line between the two cities and does not offer any realistic competition in bus service between Raleigh and Durham. The new routes do not constitute an improvement for the purpose of effecting operating economies in present service, but constitute new service in direct competition with Carolina. The testimony of witness Cruise indicates that the volume of traffic has been steadily decreasing in recent years causing a reduction in average passenger load. Over 57% of the available seats on buses operated by Carolina between Raleigh and Durham are presently unoccupied. The Commission found: "In order to continue to provide the present service between Raleigh and Durham, Carolina Coach Company must continue to carry its present Raleigh-Durham passengers and any substantial decrease in passenger traffic could result in the curtailment of the present service contrary to public interest." There is substantial evidence to support this finding.

The Utilities Commission has determined that Southern has failed to carry the burden of proving that public convenience and necessity require that it be granted its proposed routes. The decision of the Commission denying the Southern application is clearly supported by substantial evidence.

In addition to granting Carolina's application and denying Southern's application, the Utilities Commission entered the following order:

> "2. That Southern Coach Company and Carolina Coach Company shall renegotiate an equitable equipment interchange agreement to provide passengers through service without a change of coaches between Durham and Wilmington, North Carolina over the franchised routes of both carriers and submit the proposed agreement to the Commission for its consideration within thirty (30) days from the date of this order."

[7] The Commission has no power to issue an order in this manner. G.S. 62-262(j) provides that the Commission may modify a carrier's certificate "by requiring the holder to furnish more or less transportation service . . . or by imposing other reasonable terms, conditions, restrictions and limitations as public convenience and necessity . . . may require; provided, that the procedure in all such cases as to notice and hearing shall be the same as provided in this section for the issuance of a certificate or permit." Here the Commission issued its directive without any notice or hearing whatever. It simply instructed the parties peremptorily that they must enter into an agreement. Such a procedure is entirely contrary to the statutory requirements, and this portion of the Commission's order is invalid.

The Commission's order is reversed insofar as it requires Carolina and Southern to resume joint operation of the Durham-Wilmington route. In all other respects, it is affirmed.

Affirmed.

Judges CAMPBELL and MORRIS concur.