STATE OF NORTH CAROLINA EX REL. UTILITIES COMMISSION, PIEDMONT NATURAL GAS COMPANY, INC. (APPLICANT-INTERVENOR), THE PUBLIC STAFF (INTERVENOR), ATTORNEY GENERAL MICHAEL F. EASLEY (INTERVENOR) APPELLEES v. NORTH CAROLINA GAS SERVICE A DIVISION OF NUI CORPORATION (APPLICANT-INTERVENOR) APPELLANT

No. COA97-336

(Filed 6 January 1998)

1. **Utilities § 48 (NCI4th)— natural gas service—unserved area—decision between competing applications—facilitation of natural gas expansion**

The Utilities Commission's order granting Piedmont's application and denying N.C. Gas's application to provide natural gas service to a portion of Stokes County, including the City of King, facilitates natural gas expansion in unserved areas pursuant to N.C.G.S. § 62-36A where N.C. Gas's proposal was subject to delays, and Piedmont could provide gas service to several industrial facilities in Forsyth County as well as for the King area.

**2. Utilities §§ 27, 48 (NCI4th)— natural gas service—competing applications—traditional funding—weight by Utilities Commission**

The Utilities Commission could give the greatest weight to an applicant's plan to use traditional funding rather than expansion funds in deciding between competing applications to provide natural gas service to an unfranchised area.

**3. Utilities § 265 (NCI4th)— natural gas service—two suppliers not in public interest—supporting evidence**

A finding by the Utilities Commission that it was not in the public interest for the City of King to have two natural gas suppliers was supported by substantial evidence where the Commission heard opinions of citizens in the King area that it would not be in their economic interest and would cause confusion to have two suppliers of the same service, although the Commission also heard contrary opinions by other citizens. The Commission could properly assign more weight to the evidence against having two gas suppliers in the same area.

**4. Utilities § 54 (NCI4th)— natural gas franchise—award decades ago—not change of circumstances**

The fact that a natural gas supplier was awarded a franchise for Forsyth County decades ago is insufficient to show a change of circumstances requiring a rescission of the supplier's franchise for the public interest.

Appeal by N.C. Gas from order entered 25 October 1996 by the North Carolina Utilities Commission. Heard in the Court of Appeals 30 October 1997.

*Burns, Day & Presnell, P.A., by Daniel C. Higgins, for Piedmont Natural Gas Company, Inc., plaintiff appellee.*

*Public Staff Executive Director Robert P. Gruber, by Chief Counsel Antoinette R. Wike and Staff Attorney Gina C. Holt, for N.C. Utilities, plaintiff appellee.*

*Poyner & Spruill, L.L.P., by John R. Jolly, Jr., and Nancy Bentson Essex; and McCoy, Weaver, Wiggins, Cleveland & Raper, by Jim Wade Goodman, for N.C. Gas Service, defendant appellant.*

SMITH, Judge.

In 1995, the North Carolina General Assembly enacted N.C. Gen. Stat. § 62-36A, requiring that all areas of the state be assigned to a natural gas local distribution company ("LDC") by 1 January 1997. The North Carolina Utilities Commission ("Commission") entered an order providing that companies could file applications for areas they wished to serve on or before 1 January 1996. After that date, the Commission would assign any remaining unfranchised areas.

On 29 December 1995, North Carolina Gas Service, a division of NUI Corporation ("N.C. Gas"), and Piedmont Natural Gas Company, Inc. ("Piedmont") each filed applications with the Commission requesting certificates of convenience and necessity to provide natural gas service to all or part of Stokes County. N.C. Gas, which was already providing natural gas service in southeastern Stokes County, filed an application requesting authority to provide natural gas service to the remainder of Stokes County. Piedmont, which was providing service in Forsyth County in areas bordered by Stokes County, requested authority to provide service to approximately 100 square miles in southwest Stokes County including the City of King. The Commission consolidated these applications for hearing.

N.C. Gas proposed to construct a new transmission line running 8.5 miles from the Stokes County line near Pilot Mountain along old U.S. 52, which runs to the City of King. This new transmission line would connect to a transmission line which Frontier Utilities of North Carolina, Inc. ("Frontier"), planned to build. In addition, N.C. Gas submitted an alternative proposal which provided for immediate construction of a 15-mile transmission line from Walnut Cove to King. N.C. Gas stated that it would have to be allowed to serve Forsyth County customers in the vicinity of King in order to build the Walnut Cove alternative. Furthermore, N.C. Gas indicated that both of its projects would require the use of expansion funds pursuant to N.C. Gen. Stat. § 62-158 (Cum. Supp. 1996) to assist in financing construction. As of June 1996, N.C. Gas had approximately $935,000 in refunds escrowed for possible creation of an expansion fund.

In contrast, Piedmont proposed to provide service to King through a 9-mile transmission line from Winston-Salem northward through Forsyth County to King, and through a distribution system in the King area, located in both Forsyth and Stokes Counties. Piedmont did not propose to serve areas of Stokes County outside of King until these areas were developed. Piedmont initially proposed to finance

STATE ex rel. UTILITIES COMM'N v. N.C. GAS SERVICE

[128 N.C. App. 288 (1998)]

its project in part with either expansion funds or through use of a special accounting procedure allowed by the Commission for expansion projects. However, Piedmont eventually decided it would use traditional financing.

Public Staff investigated both proposals and noted that either of N.C. Gas's proposals would be less costly than Piedmont's. However, Public Staff noted that neither N.C. Gas proposal could provide service to the entire City of King since Piedmont was already authorized to serve that part of King located in Forsyth County. In addition, Public Staff only compared N.C. Gas's alternate Walnut Cove plan with Piedmont's plan because of contingencies associated with N.C. Gas's Pilot Mountain plan. Furthermore, Public Staff stated it favored Piedmont's plan because it would provide natural gas to the entire City of King, as well as the two industrial facilities in the King area of Forsyth County.

Public Staff recommended the Commission grant Piedmont's application. On 25 October 1996, the Commission issued an order granting Piedmont's application and denying N.C. Gas's application. N.C. Gas appeals from this order.

N.C. Gen. Stat. § 62-94 (1989) provides the scope of appellate review of a Commission decision. A reviewing court may reverse or modify the Commission decision if substantial rights of an appellant have been prejudiced because the Commission's findings, inferences, conclusions or decisions are: (1) violative of constitutional provisions; (2) beyond the statutory authority or jurisdiction of the Commission; (3) based upon unlawful proceedings; (4) affected by other errors of law; (5) unsupported by competent, material and substantial evidence in view of the entire record as submitted; or (6) arbitrary or capricious. *State Utilities Comm'n v. Piedmont Natural Gas Company, Inc.*, 346 N.C. 558, 568-69, 488 S.E.2d 591, 598 (1997).

**[1]** The first issue is whether the Commission's Stokes County order facilitates natural gas expansion in unserved areas of the State. The test applied by a reviewing court involves a determination of whether, after viewing the entire record, the Commission's findings and conclusions are supported by substantial, competent, and material evidence. *Id.* A general presumption is that the Commission gave proper consideration to all competent evidence presented. *Id.* In addition, a Commission determination is considered prima facie just and reasonable. *Id.* at 573, 488 S.E.2d at 601. The reviewing court cannot "set aside the Commission's recommendation merely because different

conclusions could have been reached from the evidence." *Id.* at 569, 488 S.E.2d at 598.

In the instant case, the record reveals the Commission carefully evaluated the strengths and weaknesses of the N.C. Gas and Piedmont proposals for expansion of gas in unserved areas. N.C. Gen. Stat. § 62-36A(b1) (Cum. Supp. 1996) requires the Commission to consider, among other things, the timeliness each applicant could begin service. The record supports the Commission's conclusion that N.C. Gas's Pilot Mountain proposal was contingent on Frontier's project, thus making this proposal subject to delays. Furthermore, Piedmont could provide gas service to several industrial facilities in Forsyth County as well as for the King area. The record provides substantial evidence that the Commission's order promotes gas expansion in unserved areas. Thus, this assignment of error is overruled.

[2] The second issue is whether Piedmont's decision to use traditional funding instead of expansion funds should be considered a "crucial factor" in assigning the unfranchised area. N.C. Gen. Stat. § 62-158 provides that expansion funds may be used to provide natural gas service to unserved areas "within the company's franchised territory."

> [A]ny proclaimed right [N.C. Gas] has to the creation and use of an expansion fund is limited to those areas in which it already possesses a certificate of public convenience and necessity. That "right" does not extend to unfranchised areas, such as the [City of King] area, which [is] the subject of competing certificate applications.

*Piedmont Natural Gas,* 346 N.C. at 583, 488 S.E.2d at 607.

The Commission has been given the ability to exercise its discretion and judgment in furtherance of its authority and responsibility of regulating public utilities. *Id.* at 575, 488 S.E.2d at 602. The Commission weighs and balances many factors in order to protect the interests and welfare of the general public. *Id.* at 568, 488 S.E.2d at 598. However, "[n]o law prohibits the Commission from giving one factor greater weight than any other." *Id.* at 573, 488 S.E.2d at 601. Thus, because the Commission in its discretion is allowed to give varying weight to the factors based on its interpretation of the legislative intent of the gas expansion statutes, the Commission can give the greatest weight to the sources of funding proposed by the two applicants. *Id.* Furthermore, "it is in the public interest and in accord-

ance with the policy goals of this state to pursue gas expansion through traditional financing if such an alternative is reasonably available." *Id.* at 585, 488 S.E.2d at 608. Therefore, this assignment of error is overruled.

**[3]** The third issue is whether the Commission had substantial evidence to support its finding that it was not in the public interest for the City of King to have two natural gas suppliers. Our Supreme Court has held that previously certified utilities have a " 'right . . . to have an opportunity as a regulated monopoly to render whatever service convenience and necessity may require, and it is only when it has been demonstrated that it is unable either from financial or other reasons to properly serve the public that a competing carrier will be allowed to invade the field.' " *State, ex rel. Utilities Comm'n v. Carolina Telephone and Telegraph,* 267 N.C. 257, 272, 148 S.E.2d 100, 112 (1966) (citation omitted).

In the instant case, the Commission heard opinions of the citizens in the King area concerning this issue. Some citizens thought that it would not be in their economic interest to have two suppliers of the same service, and that it would lead to confusion. The Commission has the ability to determine the credibility of the evidence presented. *State, ex rel. Utilities Comm'n v. Duke Power Company,* 285 N.C. 377, 390, 206 S.E.2d 369, 378 (1974). The Commission may also use its own expert judgment to determine the weight to be given to the evidence. *Id.* Therefore, the Commission in this case may assign more weight to the evidence against having two suppliers of gas in the same area. Further, there is no suggestion in the record that the public needs or would benefit from having two companies rendering the same service in the King area. Thus, this assignment of error is overruled.

**[4]** The fourth issue is whether the Commission erred in assuming it could not reassign the area of Forsyth County in and near the City of King to N.C. Gas. N.C. Gen. Stat. § 62-80 (1989) provides that, upon notice, the Commission may "rescind, alter, or amend any order or decision made by it" after giving the public utilities an opportunity to be heard. However, the Commission may not arbitrarily or capriciously rescind its order approving a contract between utilities. *State, ex rel. Utilities Comm'n v. Carolina Coach Co.,* 260 N.C. 43, 50, 132 S.E.2d 249, 254 (1963). The rescission must be made only due to a change of circumstances requiring it for the public interest. *Id.* In the absence of any additional evidence or a change in conditions, the

Commission has no power to reopen a proceeding and modify or set aside an order made by it. *Id.*

In the instant case, the record shows that N.C. Gas was initially seeking a franchise solely in Stokes County. N.C. Gas sought a reassignment of Piedmont's franchise in Forsyth County only in the event the Commission deemed it appropriate. Further, N.C. Gas has failed to show any change of circumstances justifying a reassignment. The only evidence N.C. Gas relies on to show the need for a modification is the fact that Piedmont was awarded the franchise for Forsyth County decades ago. This fact alone is insufficient to show a change of circumstances requiring a rescission of Piedmont's franchise for the public interest. *See id.* Thus, this assignment of error is overruled.

In conclusion, substantial evidence supports the Commission's order. Based on the foregoing reasons, the decision of the Commission to grant Piedmont's application and to deny N.C. Gas's application is

Affirmed.

Judges MARTIN, John C., and JOHN concur.