DUNNAGAN v. NDIKOM

[139 N.C. App. 246 (2000)]

———————

JAMES G. DUNNAGAN D/B/A DUNNAGAN'S MOVING & STORAGE, MOVIN' ON MOVERS, INC., HORNE STORAGE CO., INC., ATLANTIC-PACIFIC VAN & STORAGE, INC., CITY TRANSFER & STORAGE CO., INC., AND SECURITY STORAGE COMPANY OF RALEIGH, INC., INTERVENORS-PROTESTANTS-APPELLANTS V. KYRIAN C. NDIKOM D/B/A AMERICAN MOVING SERVICE, PETITIONER-APPELLEE AND STATE OF NORTH CAROLINA EX REL. UTILITIES COMM'N, RESPONDENT-APPELLEE

No. COA99-1020

(Filed 1 August 2000)

**Carriers— moving company—intrastate transport of public goods—certificate of public convenience and necessity**

The Utilities Commission erred by granting a certificate of public convenience and necessity to petitioner to transport household goods throughout the State of North Carolina where the Commission's conclusion that public convenience and necessity require the proposed service was not supported by the evidence and the record was devoid of evidence that the proposed operation would not impair the operations of existing carriers contrary to public interest, which petitioner had the burden of establishing. Contrary to the Commission's suggestion, the intervenors did not have the burden of showing that granting the application would have a ruinous effect upon them.

Judge WALKER dissenting.

---

DUNNAGAN v. NDIKOM

[139 N.C. App. 246 (2000)]

Appeal by intervenors from judgment entered 12 May 1999 by the North Carolina Utilities Commission. Heard in the Court of Appeals 18 May 2000.

*Parker, Poe, Adams & Bernstein, L.L.P., by James C. Thornton and Jason J. Kaus, for intervenors-protestants-appellants.*

*Bailey & Dixon, L.L.P., by Ralph McDonald, for petitioner-appellee.*

*No brief for respondent-appellee.*

TIMMONS-GOODSON, Judge.

On 13 October 1998, Kyrian C. Ndikom d/b/a American Moving Service ("petitioner") filed an application for a certificate of public convenience and necessity with the North Carolina Utilities Commission ("the Commission"), seeking common carrier authority to transport Group 18-A household goods throughout the State of North Carolina.

Moving companies who had previously been authorized by the Commission to provide intrastate, long-distance moving services, namely James G. Dunnagan d/b/a Dunnagan's Moving & Storage, Movin' on Movers, Inc., Horne Storage Co., Inc., Atlantic-Pacific Van & Storage, Inc., City Transfer & Storage Co., Inc., and Security Storage Company of Raleigh, Inc., ("intervenors") filed a joint protest and petition to intervene in the matter. The Commission granted their motion to intervene.

The following evidence was presented at the hearing before Hearing Examiner Barbara A. Sharpe. Petitioner worked for his mother's moving company, American Moving Systems & Storage ("American"), for approximately one year. American provided local moving services in Durham, North Carolina. Petitioner had never provided statewide, long-distance moving services in North Carolina prior to filing his application with the Commission. Petitioner had one employee, and he planned to use four trucks for his moving service, at least three of which were titled in his mother's name. While working for American, petitioner provided unlawful moving services, failed to provide workers' compensation insurance coverage for his employee, failed to withhold payroll taxes from the employee's wages, and was partly responsible for false and misleading advertising published by the company.

Approximately two hundred goods carriers were authorized in North Carolina at the time of the hearing. Intervenors are sometimes idle due to a lack of demand for movers. They have not refused any potential customer for lack of capacity, and they are capable of accommodating any foreseeable increase in demand for intrastate moving services.

The Hearing Examiner issued a recommended order denying petitioner's application on 12 February 1999. Petitioner filed exceptions and the Commission heard oral arguments on the exceptions. On 12 May 1999, the Commission entered its final order, which included the following pertinent findings of fact:

2. Applicant is a sole proprietor located in Durham, North Carolina, and desires to operate under the trade name American Moving Service. Applicant currently works for American Moving Systems & Storage (American Moving Systems) owned by his mother. American Moving Systems operates within the Durham commercial zone and has provided some moves outside the Durham area prior to the receipt of its exemption certificate from the Division of Motor Vehicles in 1998. Applicant has performed no moves under the name of American Moving Service.

. . . .

5. Henry L. Platts, Sr., is a resident of Durham and a retired, disabled truck driver. In February 1998, Mr. Platts met the Applicant when American Moving Systems moved him within the Durham city limits. Prior to the move, Mr. Platts called a number of moving companies in the Durham telephone book. He received some estimates and finally hired American Moving Systems. He was very satisfied with the move. Mr. Platts testified that he has no plans to move in the future but that his daughter will be moving from Roxboro to Durham in the future. He would recommend that she use the Applicant for the move if this authority is granted. Mr. Platts also testified that, based upon his knowledge of and acquaintance with the Applicant, he believes the Applicant would be a good business owner.

6. Juliette Wilkerson is a resident of Durham, North Carolina. In October 1998, she needed to move within the city limits of Durham. She called several moving companies to find one that was reasonably priced. Ms. Wilkerson used American Moving Systems because they were the most reasonably priced of those

she contacted, and they were also the only company that could move her so quickly. She called on Wednesday for a move on Saturday. Ms. Wilkerson was very pleased with the move and testified that American Moving Systems [was] prompt, very courteous, and took good care of her many antique pieces of furniture. In a few months she will be purchasing a house within the Durham city limits and desires to once again use the services of American Moving Systems. She has no future plans to move outside of Durham. Ms. Wilkerson also testified that, based upon her experience with the Applicant as a representative of American Moving Systems, she believes the Applicant will be a good business owner.

7. City Transfer has statewide household goods authority under Certificate No. C-131. . . . Mr. Lassiter testified that City Transfer is providing service throughout North Carolina. In 1998, approximately 10-12 moves were performed in and out of the City of Durham. Mr. Lassiter further testified that the moving business is seasonal with the busiest time being summer months and the first and last of each month due to closings and expired leases. During the less busy times of the year, City Transfer does have idle equipment. Mr. Lassiter testified that he believes the granting of this application would adversely impact his company by reducing the potential revenue available for certificated household goods movers.

8. Security Storage is located in Raleigh and has Certificate No. C-721 which authorizes the statewide transportation of household goods. It has approximately 25 vehicles in the Raleigh location and employs about 25 full and part-time workers. . . . Mr. Carey estimated that his company receives four to five calls per month from customers desiring to move in and out of Durham. Mr. Carey further testified that he believes the granting of this application would impair the services his company renders in the Triangle area by reducing the overall revenue potential for certificated movers.

9. James Dunnagan is the owner of Dunnagan's Moving & Storage located in Wilmington, North Carolina. He holds statewide household goods authority under Certificate No. C-1456 issued in 1986. Mr. Dunnagan testified that during 1998, he made 13 regulated moves to and/or from Wilmington to the Raleigh/Durham area. He further testified that he has idle equipment. During 1998, he had 72 days in which no moves were made.

He has two straight trucks and a pack truck. Because the moving business is seasonal, however, Mr. Dunnagan stated that he will rent additional trucks and hire part-time employees during the busiest season, if needed, before he would turn down business.

Based on its findings of fact, the Commission made the following relevant conclusions of law:

The Applicant, in addition to his own testimony, presented two witnesses who testified in support of his application. Both witnesses were acquainted with the Applicant because of previous moves performed for them by the moving company owned by the Applicant's mother, American Moving Systems. The Applicant works for his mother's company. These moves were within the city limits of Durham. . . .

Actual testimony by the Applicant's witnesses establishing the need for moves to and from other areas of the state would have been desirable, however, it is not mandatory . . . . It is within the discretion of the Commission, when viewing the record in [its] entirety, to conclude that the Applicant has met his burden. The testimony taken as a whole, in the discretion of the Commission, does support a grant of statewide authority.

. . . .

The second element of public convenience and necessity which must be considered is whether the proposed operation would impair the operations of the Protestants and other existing carriers contrary to public interest. Three of the seven Protestants appeared at the hearing to testify in opposition to the application. Basically, the Protestants testified that the granting of this application would adversely impact their companies by reducing the potential revenue available for certificated household goods movers. Again, it is within the discretion of the Commission, when viewing the record in [its] entirety, to conclude whether the proposed operation would or would not impair the operations of the Protestants and other existing carriers contrary to public interest.

The Commission concludes, therefore, that the evidence does not support a finding that the grant of statewide authority would have a ruinous competitive effect upon authorized carriers.

DUNNAGAN v. NDIKOM

[139 N.C. App. 246 (2000)]

The Commission concludes that public convenience and necessity require the proposed service . . . in addition to existing authorized transportation services.

Based on its conclusions of law, the Commission rejected the recommended order in part and granted petitioner's application. In its final order of 13 May 1999, the Commission issued an errata order modifying in part the 12 May 1999 order. Intervenors appeal.

On 30 September 1999, the North Carolina Court of Appeals ordered this matter consolidated with No. COA99-1085 pursuant to Rule 40 of the North Carolina Rules of Appellate Procedure.

---

By their only assignment of error, intervenors argue that the Commission erred in granting petitioner's application for a certificate of public convenience and necessity. Specifically, intervenors argue that petitioner failed to show that public convenience and necessity required his proposed service for purposes of North Carolina General Statutes section 62-262(e). We agree.

Judicial review of an order of the Commission is governed by North Carolina General Statutes section 62-94(b), which provides:

So far as necessary to the decision and where presented, the court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning and applicability of the terms of any Commission action. The court may affirm or reverse the decision of the Commission, declare the same null and void, or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the appellants have been prejudiced because the Commission's findings, inferences, conclusions or decisions are:

(1) In violation of constitutional provisions, or

(2) In excess of statutory authority or jurisdiction of the Commission, or

(3) Made upon unlawful proceedings, or

(4) Affected by other errors of law, or

(5) Unsupported by competent, material and substantial evidence in view of the entire record as submitted, or

(6) Arbitrary or capricious.

N.C. Gen. Stat. § 62-94(b) (1999). The reviewing court must determine whether there is substantial evidence, in view of the entire record, in support of the position which the Commission adopted, regardless of whether evidence to the contrary exists. *State ex rel. Utilities Comm. v. Eddleman*, 320 N.C. 344, 355, 358 S.E.2d 339, 347 (1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Utilities Comm. v. Coach Co.*, 19 N.C. App. 597, 601, 199 S.E.2d 731, 733 (1973) (quoting *Consolidated Edison Co. v. National L. R. Bd.*, 305 U.S. 197, 229, 83 L. Ed. 126, 140 (1938)). As the Commission's decision is considered *prima facie* just and reasonable, N.C. Gen Stat. § 62-94(e) (1999), it should be affirmed if supported by substantial evidence.

To obtain authorization to provide intrastate, long-distance moving services, an applicant must prove to the satisfaction of the Commission:

(1) That public convenience and necessity require the proposed service in addition to existing authorized transportation service, and

(2) That the applicant is fit, willing and able to properly perform the proposed service, and

(3) That the applicant is solvent and financially able to furnish adequate service on a continuing basis.

N.C. Gen. Stat. § 62-262(e) (1999). In order to meet the burden imposed by North Carolina General Statutes section 62-262(e)(1), an applicant must establish that there is a "substantial public need" for their proposed service in addition to existing authorized services. *Utilities Commission v. Trucking Co.*, 223 N.C. 687, 690, 28 S.E.2d 201, 203 (1943) (holding that the Commission properly denied the petitioner's application where the present intrastate carriers over the proposed route reasonably met existing transportation needs).

[W]hat constitutes "public convenience and necessity" is primarily an administrative question with a number of imponderables to be taken into consideration, *e.g.*, whether there is a substantial public need for the service; whether the existing carriers can reasonably meet this need, and whether it would endanger or impair the operations of existing carriers contrary to the public interest.

*Id.* While the approval of an application is not prohibited by the fact that competing carriers would be adversely affected by competition, *Utilities Comm. v. American Courier Corp.*, 8 N.C. App. 358, 366, 174 S.E.2d 814, 820 (1970), "if the proposed operation under the certificate sought would seriously endanger or impair the operations of existing carriers contrary to the public interest, the certificate should not be issued," *Utilities Comm. v. Coach Co.*, 4 N.C. App. 116, 124, 166 S.E.2d 441, 446 (1969) (remanding to the Commission for findings of fact regarding whether the granting of the application would endanger or impair the operations of existing carriers and whether the existing carriers could reasonably meet the public need). "The convenience and necessity required are those of the public and not of an individual or individuals." *Utilities Comm. v. Coach Co. and Utilities Comm. v. Greyhound Corp.*, 260 N.C. 43, 52, 132 S.E.2d 249, 255 (1963) (citation omitted).

Petitioner in the present case argues that he did not have the negative burden of showing that the existing authorized providers could not satisfy the public demand for long-distance moving services. However, the statutory language of section 62-262(e) clearly provides that the "burden of proof shall be on the applicant" to show that public convenience and necessity require the proposed service. N.C.G.S. § 62-262(e). As stated above, "public convenience and necessity" encompasses considerations such as whether existing carriers can reasonably meet the public demand for moving services and whether granting the proposed application would impair the operations of existing carriers. *Trucking Co.*, 223 N.C. at 690, 28 S.E.2d at 203. As such, we hold that petitioner had the burden of showing that existing authorized providers could not satisfy the public demand for long-distance intrastate moving services and that granting the proposed application would not impair the operations of existing carriers. We note, however, that these factors are not "solely determinative of the right of the Commission to grant the application." *Coach Co.*, 4 N.C. App. at 124, 166 S.E.2d at 446. Our holding is consistent with our Supreme Court's decision pertaining to communications in *Utilities Commission v. Telegraph Co.*, 267 N.C. 257, 271, 148 S.E.2d 100, 111 (1966) (stating that "a certificate will not be granted to a competitor in the absence of a showing that the utility already in the field is not rendering and cannot or will not render the specific service in question").

In the present case, petitioner presented the following evidence that there was a substantial public need for his proposed service.

Petitioner worked at American Moving Systems, the moving company owned by the his mother, for approximately one year. American Moving Systems performed local moves for Henry L. Platts, Sr. ("Platts") and Juliette Wilkerson ("Wilkerson"). Both witnesses were satisfied with the moving services. Platts would recommend that his daughter employ the petitioner for a contemplated long-distance move. Wilkerson plans to use American Moving Systems in the future for another move within the Durham city limits.

We hold that the Commission's conclusion that public convenience and necessity require the proposed service is unsupported by competent evidence in view of the entire record. Petitioner failed to show that any individual required his service for a non-local, intrastate move. The testimony by Platts that he would recommend that his daughter use petitioner's services for a long-distance move does not constitute material evidence of a substantial public need. In its conclusions of law, the Commission stated:

> Actual testimony by the Applicant's witnesses establishing the need for moves to and from other areas of the state would have been desirable, however, it is not mandatory. . . . It is within the discretion of the Commission, when viewing the record in [its] entirety, to conclude that the Applicant has met his burden. The testimony taken as a whole, in the discretion of the Commission, does support a grant of statewide authority.

However, in the absence of any other evidence, such as statistics or expert testimony, petitioner's application must fail where no witness demonstrates that petitioner's services are needed to execute a non-local, intrastate move.

Furthermore, petitioner failed to present evidence on the issues of whether existing carriers could reasonably meet the need for intrastate moving services and whether the granting of his application would impair the operations of existing carriers contrary to the public interest. While intervenors did not have the burden of showing that the proposed service would seriously impair their operation, they presented uncontroverted evidence that they are sometimes idle due to a lack of demand for movers, they have not refused any potential customer for lack of capacity, they are capable of accommodating any foreseeable increase in demand for intrastate moving services, and the proposed service would impair their companies by reducing the overall revenue potential for certificated movers. The Commission then concluded as a matter of law:

The second element of public convenience and necessity which must be considered is whether the proposed operation would impair the operations of the Protestants and other existing carriers contrary to public interest. Three of the seven Protestants appeared at the hearing to testify in opposition to the application. Basically, the Protestants testified that the granting of this application would adversely impact their companies by reducing the potential revenue available for certificated household goods movers. Again, it is within the discretion of the Commission, when viewing the record in [its] entirety, to conclude whether the proposed operation would or would not impair the operations of the Protestants and other existing carriers contrary to public interest.

The Commission concludes, therefore, that the evidence does not support a finding that the grant of statewide authority would have a ruinous competitive effect upon authorized carriers.

We hold that the Commission's conclusions both misapprehend the law and are not supported by the competent evidence in light of the whole record. The Commission's discretion "to conclude whether the proposed operation would or would not impair the operations of the Protestants" is not unfettered; its conclusions must be based on material and substantial evidence. As the record is devoid of evidence that the proposed operation would not impair the operations of existing carriers contrary to the public interest, the conclusion of the Commission is in error.

Furthermore, the Commission misapprehended the law when it concluded that "the evidence does not support a finding that the grant of statewide authority would have a ruinous competitive effect upon authorized carriers." As stated above, petitioner had the burden to establish that granting his proposed application would not seriously impair the operations of existing carriers. Intervenors did not, as the Commission suggested, have the burden of showing that granting petitioner's application would have a ruinous effect upon them.

For the reasons stated herein, we hold that the Commission erred in granting petitioner's application for a certificate of public convenience and necessity. The order of the Commission is therefore reversed.

Reversed.

Judge SMITH concurs.

Judge WALKER dissents.

Judge WALKER dissenting.

I respectfully dissent from the majority opinion holding the Commission erred in granting petitioner's application. The appellants-intervenors are existing carriers seeking to prevent the petitioner from obtaining common carrier authority to transport Group 18-A household goods throughout the State.

The majority cites to the three requirements an applicant must prove to the satisfaction of the Commission pursuant to N.C. Gen. Stat. § 62-262(e). The only one of the three at issue here is the following:

(1) That public convenience and necessity require the proposed service in addition to existing authorized transportation service.

N.C. Gen. Stat. § 62-262(e) (1999).

In reviewing a decision of the Utilities Commission, this Court's role is to determine whether the entire record supports the Commission's decision; and where there are two reasonably conflicting views of the evidence, this Court may not substitute its judgment for that of the Commission. *See State ex rel. Util. Comm'n v. Carolina Indus. Group*, 130 N.C. App. 636, 639, 503 S.E.2d 697, 699-700, *disc. review denied*, 349 N.C. 377, 525 S.E.2d 465 (1998). The determination is whether the Utilities Commission's findings and conclusion are supported by substantial, competent, and material evidence. *See State ex rel. Utilities Comm'n v. N.C. Gas Service*, 128 N.C. App. 288, 291, 494 S.E.2d 621, 624 (1998). Substantial evidence is defined as "more than a scintilla or a permissible inference," and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Utilities Comm. v. Coach Co.*, 19 N.C. App. 597, 601, 199 S.E.2d 731, 733 (1973), *cert. denied*, 284 N.C. 623, 201 S.E.2d 693 (1974). In determining whether a petitioner has presented substantial evidence in support of his position, our Supreme Court has stated the Commission may agree with the evidence of a single witness even though there may be opposing wit-

nesses. *See State ex rel. Utilities Comm. v. Eddleman*, 320 N.C. 344, 352, 358 S.E.2d 339, 346 (1987) (stating "the Commission may agree with a single witness—if the evidence supports his position—no matter how many opposing witnesses might come forward").

In *Utilities Comm. v. Coach Co. and Utilities Comm. v. Greyhound Corp.*, 260 N.C. 43, 132 S.E.2d 249 (1963), cited by the majority, our Supreme Court addressed the issue of public convenience and necessity and stated:

> Whether there shall be competition in any given field and to what extent is largely a matter of policy committed to the sound judgment and discretion of the Commission. The Commission must maintain a reasonable balance to see that the public is adequately served and at the same time to see that the public and the public utilities involved are not prejudiced by the efforts which flow from excessive competition brought about by excessive services. ·

*Id.* at 51, 132 S.E.2d at 254-55 (citation omitted). Additionally, our Supreme Court held that "the facts in each case must be separately considered and from those facts it must be determined whether public convenience and necessity requires [sic] a given service to be performed or dispensed with." *Id.* at 52, 132 S.E.2d at 255. Furthermore, our Supreme Court stated:

> Upon the same facts we might have reached a different result. But it is not for this Court to find the facts or to regulate utilities. "The decisions of the Utilities Commission must be within the authority conferred by the Act, yet the weighing of the evidence and the exercise of judgment thereon as to transportation problems within the scope of its powers are matters for the Commission."

*Id.* at 54, 132 S.E.2d at 257 (citations omitted).

Here, the entire record reveals that the Commission's findings are supported by "such relevant evidence as a reasonable mind might accept as adequate" to support its conclusion that petitioner met his burden. *Coach Co.*, 19 N.C. App. at 601, 199 S.E.2d at 733.