UNION TRANSFER AND STORAGE CO. v. LEFEBER

[139 N.C. App. 280 (2000)]

———————————

UNION TRANSFER AND STORAGE CO., INC., SMITH DRAY LINE & STORAGE CO., INC., EUGENE V. NIX AND DIXIE C. NIX D/B/A FOUR SEASONS MOVING COMPANY, AND WILE TRANSFER AND STORAGE CO., INC., INTERVENORS-PROTESTANTS-APPELLANTS v. NICOLAS WILLIAM LEFEBER D/B/A SELECT MOVING, PETITIONER-APPELLEE AND STATE OF NORTH CAROLINA EX REL. UTILITIES COMM'N, RESPONDENT-APPELLEE

No. COA99-1085

(Filed 1 August 2000)

**Carriers— moving company—certificate of public convenience and necessity—service to Hispanic community**

The Utilities Commission erred by granting a certificate of public convenience and necessity for petitioner to transport household goods throughout North Carolina where the conclusion that public convenience and necessity require the proposed service was unsupported by competent evidence in view of the entire record and the record was devoid of any findings that the proposed operation would not impair the operations of existing carriers contrary to the public interest. Petitioner's desire to serve the Hispanic community is commendable, but he failed to show that the moving needs of the Hispanic community were not being met by existing intrastate moving services.

Judge WALKER dissenting.

UNION TRANSFER AND STORAGE CO. v. LEFEBER

[139 N.C. App. 280 (2000)]

Appeal by intervenors from judgment entered 30 June 1999 by the North Carolina Utilities Commission. Heard in the Court of Appeals 18 May 2000.

*Parker, Poe, Adams & Bernstein, L.L.P., by James C. Thornton and Jason J. Kaus, for intervenors-protestants-appellants.*

*No brief for petitioner-appellee.*

*No brief for respondent-appellee.*

TIMMONS-GOODSON, Judge.

On 19 January 1999, Nicolas William Lefeber d/b/a Select Moving ("petitioner") filed an application for a certificate of public convenience and necessity with the North Carolina Utilities Commission ("the Commission"), seeking common carrier authority to transport Group 18-A household goods throughout the State of North Carolina.

Moving companies who had previously been authorized by the Commission to provide intrastate, long-distance moving services, namely Union Transfer and Storage Co., Inc., Smith Dray Line & Storage Co., Inc., Eugene V. Nix and Dixie C. Nix d/b/a Four Seasons Moving Company, and Wile Transfer and Storage Co., Inc. ("intervenors"), filed a joint protest and petition to intervene in the matter. The Commission granted their motion to intervene.

The following evidence was presented at the hearing before Hearing Examiner Barbara A. Sharpe. Petitioner worked as a florist for approximately forty-five years. While petitioner had provided local moving services in Florida in the mid-1970's for several years, he had no experience in providing statewide moving services in North Carolina or in any other state. At the time petitioner applied for a certificate, his moving equipment consisted of a 1979 Dodge van and moving dollies. Petitioner had no employees, office or storage facilities when he applied for the certificate, but he intended to acquire them.

Intervenors are sometimes idle due to a lack of demand for movers. They are capable of accommodating the demand for intrastate moving services in the Hendersonville area and have never turned away a customer as a result of communication problems.

The Hearing Examiner issued a recommended order denying petitioner's application on 28 April 1999. Petitioner filed exceptions and

the Commission heard oral arguments on the exceptions. On 30 June 1999, the Commission entered its final order, which included the following pertinent findings of fact:

>    4. [Petitioner] owns a 14½ foot van suitable for the movement of household goods along with dollies. He plans to purchase additional equipment and vehicles as needed. If this application is granted, [petitioner] will purchase the required liability and cargo insurance for his vehicle and file the required tariff of rates and charges. [Petitioner's] assets exceed liabilities.

>    . . . .

>    6. [Petitioner] speaks Spanish and four other languages and will be of service, especially in the Hispanic community, as well as to any other citizen. [Petitioner] plans to advertise over the Spanish-speaking radio and in the Spanish newspaper.

>    7. Glen Ray Cantrell has been employed by the Hendersonville County Chamber of Commerce for 39 years. He is the Executive Director of the Committee 100, which is the economic development arm for the county. Because of Mr. Cantrell's position with the Chamber of Commerce, he is familiar with the general population and industry trends in Henderson County. Since 1990, the population in Henderson County has increased by approximately 13.5%, which would be in the top five counties in Western North Carolina in percentage of increase in population. Statistics indicate that retirees account for the greatest percentage of increase with the majority of retirees coming from out of state. The Hispanic population is the fastest growing population in the nonwhite category.

>    8. Alfredo M. Oviedo is Pastor of the Hispanic Baptist Mission and lives in Edneyville in Henderson County. The church is a Spanish speaking church, and he has pastored the church since December 1992. The church has 45 members with an average Sunday attendance of 100. Pastor Oviedo testified that the Spanish speaking population has increased in Henderson County and that people move from one side of the county to the other on a fairly frequent basis. He further testified that usually at the beginning the people who come to the county are mostly single men who come to work. After a few years, the men have stable work and bring their families to the county which requires a move to a different place where they would like to live. Sometimes

these people also move outside the county to other parts of the state, usually the Triangle (Raleigh, Durham, Chapel Hill) area. Besides the cultural shock which Hispanics who come to the county experience, language is also a barrier. On cross-examination, Pastor Oviedo stated that he was not aware of anyone being turned away by an existing mover in the area because of communication problems.

9. Daniel C. Gibson is retired and lives in Hendersonville. Prior to retirement he worked for First Union National Bank in Hendersonville for 38 years. Mr. Gibson first met [petitioner] in the early 1950's. [Petitioner] was one of his bank's customers, and [petitioner] regularly received large seasonal loans for his wholesale flower business. Mr. Gibson testified that [petitioner] always repaid the loans and always maintained good balances at the bank which indicated that he was a successful businessman.

10. Marie J. C. Lefeber is [petitioner's] wife and of Hispanic origin. If this application is granted, she plans to work in the office answering the telephone and taking orders for moves. Mrs. Lefeber speaks Spanish and socializes and interacts with other Hispanic [sic] speaking people in the area. This is one reason she and her husband want to offer moving services primarily to the Hispanic community.

11. Wayne Campbell is President of Union Transfer located in Asheville. . . . Mr. Campbell testified that the moving business is seasonal with the peak season being May to September in addition to certain times of each month. Conversely, there are off-peak times in which his company experiences idle equipment and employees.

12. In 1998, Union Transfer performed 85 intrastate moves, six of these moves were in the Hendersonville area. Mr. Campbell stated that he believes that another mover is not needed in the Hendersonville area. He also testified that he has never turned away a Hispanic customer because of communication problems and that most times the cost of the move is the problem. He also stated that his company is an agent for United Van Lines, and he has access to people at United Van Lines who speak different languages. Therefore, he does have access to someone when the need arises. On cross-examination, Mr. Campbell testified that he does not have any Hispanic employees but that he has actively been seeking some Hispanic employees for the past six months.

He further testified that approximately 10-15% of Union Transfer's moving business is intrastate, 50-60% is interstate, and the remainder is local intracity moves.

13. Patricia Nelson Schnyder is Sales Manager for Wile Transfer located in Hendersonville. . . . Wile Transfer is an authorized statewide goods mover . . . . Ms. Schnyder testified that Wile Transfer has moved people of Hispanic origin on a national basis to the Hendersonville area. She further testified that she has talked with people of Hispanic origin in the Hendersonville area who desire a local move. She experienced no communication problems mainly because the people either used an interpreter or knew enough English to communicate. Wile Transfer is an agent for Allied Van Lines and has access to an interpreter through them as needed. Ms. Schnyder did state, however, that it would be a time-consuming process to obtain an interpreter from Allied Van Lines.

Based on its findings of fact, the Commission made the following relevant conclusions of law:

[Petitioner], in addition to his own testimony, presented four witnesses who testified in support of his application. None of the witnesses, however, testified to a personal need for a present or future movement of household goods. . . .

. . . .

Endorsement and support of [petitioner] by supporting witnesses **does** assist the Commission in making its discretionary decision as to whether there is a sufficient nexus to establish public demand and need for [petitioner's] services. In a "free enterprise system" of doing business, if the Commission in its discretion, can establish such a nexus based on the facts, testimony, and evidence presented, then [petitioner] is deserving of a grant of authority and the opportunity to conduct his business. Also, there was no evidence offered of any merit upon questioning by the Commissioners during oral argument that by granting this [petitioner] authority **"would endanger or impair the operations of existing carriers contrary to the public interest."** Therefore, based upon the testimony as a whole, the Commission concludes that [petitioner] has sustained his burden of proof that public convenience and necessity require the proposed service in addition to existing authorized transportation service.

The Commission concludes that [petitioner] has sustained his burden of proof and that public convenience and necessity require the proposed service in addition to existing authorized transportation service.

Based on its conclusions of law, the Commission rejected the recommended order and granted petitioner's application. Intervenors appeal.

On 30 September 1999, the North Carolina Court of Appeals ordered this matter consolidated with No. COA99-1020 pursuant to Rule 40 of the North Carolina Rules of Appellate Procedure.

---

By their only assignment of error, intervenors argue that the Commission erred in granting petitioner's application for a certificate of public convenience and necessity. Specifically, intervenors argue that petitioner failed to show that public convenience and necessity required his proposed service for purposes of North Carolina General Statutes section 62-262(e). We agree.

Judicial review of an order of the Commission is governed by North Carolina General Statutes section 62-94(b), which provides:

So far as necessary to the decision and where presented, the court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning and applicability of the terms of any Commission action. The court may affirm or reverse the decision of the Commission, declare the same null and void, or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the appellants have been prejudiced because the Commission's findings, inferences, conclusions or decisions are:

(1) In violation of constitutional provisions, or

(2) In excess of statutory authority or jurisdiction of the Commission, or

(3) Made upon unlawful proceedings, or

(4) Affected by other errors of law, or

(5) Unsupported by competent, material and substantial evidence in view of the entire record as submitted, or

(6) Arbitrary or capricious.

N.C. Gen. Stat. § 62-94(b) (1999). The reviewing court must determine whether there is substantial evidence, in view of the entire record, in support of the position which the Commission adopted, regardless of whether evidence to the contrary exists. *State ex rel. Utilities Comm. v. Eddleman*, 320 N.C. 344, 355, 358 S.E.2d 339, 347 (1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Utilities Comm. v. Coach Co.*, 19 N.C. App. 597, 601, 199 S.E.2d 731, 733 (1973) (quoting *Consolidated Edison Co. v. National L. R. Bd.*, 305 U.S. 197, 229, 83 L. Ed. 126, 140 (1938)). As the Commission's decision is considered *prima facie* just and reasonable, N.C. Gen. Stat. § 62-94(e) (1999), it should be affirmed if supported by substantial evidence.

To obtain authorization to provide intrastate, long-distance moving services, an applicant must prove to the satisfaction of the Commission:

(1)  That public convenience and necessity require the proposed service in addition to existing authorized transportation service, and

(2)  That the applicant is fit, willing and able to properly perform the proposed service, and

(3)  That the applicant is solvent and financially able to furnish adequate service on a continuing basis.

N.C. Gen. Stat. § 62-262(e) (1999). In order to meet the burden imposed by North Carolina General Statutes section 62-262(e)(1), an applicant must establish that there is a "substantial public need" for their proposed service in addition to existing authorized services. *Utilities Commission v. Trucking Co.*, 223 N.C. 687, 690, 28 S.E.2d 201, 203 (1943) (holding that the Commission properly denied the petitioner's application where the present intrastate carriers over the proposed route reasonably met existing transportation needs).

> [W]hat constitutes "public convenience and necessity" is primarily an administrative question with a number of imponderables to be taken into consideration, *e.g.*, whether there is a substantial public need for the service; whether the existing carriers can reasonably meet this need, and whether it would endanger or impair the operations of existing carriers contrary to the public interest.

*Id.* While the approval of an application is not prohibited by the fact that competing carriers would be adversely affected by competition,

UNION TRANSFER AND STORAGE CO. v. LEFEBER

[139 N.C. App. 280 (2000)]

*Utilities Comm. v. American Courier Corp.*, 8 N.C. App. 358, 366-67, 174 S.E.2d 814, 820 (1970), "if the proposed operation under the certificate sought would seriously endanger or impair the operations of existing carriers contrary to the public interest, the certificate should not be issued," *Utilities Comm. v. Coach Co.*, 4 N.C. App. 116, 124, 166 S.E.2d 441, 446 (1969) (remanding to the Commission for findings of fact regarding whether the granting of the application would endanger or impair the operations of existing carriers and whether the existing carriers could reasonably meet the public need). "The convenience and necessity required are those of the public and not of an individual or individuals." *Utilities Comm. v. Coach Co. and Utilities Comm. v. Greyhound Corp.*, 260 N.C. 43, 52, 132 S.E.2d 249, 255 (1963) (citations omitted).

In the present case, petitioner presented the following evidence that there was a substantial public need for his proposed service. Petitioner and his wife speak Spanish and will be of service, especially in the Hispanic community. The population of Henderson County has increased since 1990, mainly due to retirees moving to the area from out of state. The Hispanic population is the fastest growing nonwhite population. Hispanic people move within the county on a fairly frequent basis and sometimes they move to other parts of the state. Language barriers and cultural shock present challenges to Hispanic people who have recently moved to this country.

We hold that the Commission's conclusion that public convenience and necessity require the proposed service is unsupported by competent evidence in view of the entire record. Petitioner failed to show that any individual required his service for a non-local, intrastate move. Indeed, the Commission stated in its conclusions of law that "[n]one of the witnesses . . . testified to a personal need for a present or future movement of household goods."

Additionally, while petitioner's desire to serve the Hispanic community is commendable, he failed to show that the moving needs of the Hispanic community were not being met by existing intrastate moving services. Petitioner's witness, Pastor Oviedo, stated that he was not aware of anyone being rejected by an existing mover because of communication barriers. Intervenors presented uncontroverted evidence that they had never refused a customer as a result of a language or cultural barrier and that they had access to an interpreter.

A showing that there has been a population increase with nothing more does not establish sufficient evidence of a substantial public need for petitioner's proposed service. This is especially true where the growth rate is largely due to retirees moving interstate, a population that petitioner could not serve even if his application were granted. Petitioner failed to present evidence regarding whether the existing authorized movers could accommodate any increase in demand for intrastate moving services which may have resulted from the population increase in Henderson County.

Finally, petitioner failed to present evidence on the issues of whether existing carriers could reasonably meet the need for intrastate moving services and whether granting his application would impair the operations of existing carriers contrary to the public interest. While intervenors did not have the burden of showing that the proposed service would seriously impair their operation, they presented undisputed evidence that they are sometimes idle due to a lack of demand for movers and that they are capable of accommodating the demand for intrastate moving services in the Hendersonville area.

We hold that the Commission's conclusions are not supported by the competent evidence in light of the whole record. The Commission's conclusions must be based on material and substantial evidence. As the record is devoid of any findings that the proposed operation would not impair the operations of existing carriers contrary to the public interest, the conclusion of the Commission is in error.

For the reasons stated herein, we find that the Commission erred in granting petitioner's application for a certificate of public convenience and necessity. The order of the Commission is therefore reversed.

Reversed.

Judge SMITH concurs.

Judge WALKER dissents.

Judge WALKER dissenting.

I respectfully dissent from the majority opinion holding the Commission erred in granting petitioner's application. The appel-

lants-intervenors are existing carriers seeking to prevent the petitioner from obtaining common carrier authority to transport Group 18-A household goods throughout the State.

The majority cites to the three requirements an applicant must prove to the satisfaction of the Commission pursuant to N.C. Gen. Stat. § 62-262(e). The only one of the three at issue here is the following:

> (1) That public convenience and necessity require the proposed service in addition to existing authorized transportation service.

N.C. Gen. Stat. § 62-262(e) (1999).

In reviewing a decision of the Utilities Commission, this Court's role is to determine whether the entire record supports the Commission's decision; and where there are two reasonably conflicting views of the evidence, this Court may not substitute its judgment for that of the Commission. *See State ex rel. Util. Comm'n v. Carolina Indus. Group*, 130 N.C. App. 636, 639, 503 S.E.2d 697, 699-700, *disc. review denied*, 349 N.C. 377, 525 S.E.2d 465 (1998). The determination is whether the Utilities Commission's findings and conclusion are supported by substantial, competent, and material evidence. *See State ex rel. Utilities Comm'n v. N.C. Gas Service*, 128 N.C. App. 288, 291, 494 S.E.2d 621, 624 (1998). Substantial evidence is defined as "more than a scintilla or a permissible inference," and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Utilities Comm. v. Coach Co.*, 19 N.C. App. 597, 601, 199 S.E.2d 731, 733 (1973), *cert. denied*, 284 N.C. 623, 201 S.E.2d 693 (1974). In determining whether a petitioner has presented substantial evidence in support of his position, our Supreme Court has stated the Commission may agree with the evidence of a single witness even though there may be opposing witnesses. *See State ex rel. Utilities Comm. v. Eddleman*, 320 N.C. 344, 352, 358 S.E.2d 339, 346 (1987) (stating "the Commission may agree with a single witness—if the evidence supports his position—no matter how many opposing witnesses might come forward").

In *Utilities Comm. v. Coach Co. and Utilities Comm. v. Greyhound Corp.*, 260 N.C. 43, 132 S.E.2d 249 (1963), cited by the majority, our Supreme Court addressed the issue of public convenience and necessity and stated:

> Whether there shall be competition in any given field and to what extent is largely a matter of policy committed to the sound judg-

MURPHY v. COASTAL PHYSICIAN GRP., INC.

[139 N.C. App. 290 (2000)]

ment and discretion of the Commission. The Commission must maintain a reasonable balance to see that the public is adequately served and at the same time to see that the public and the public utilities involved are not prejudiced by the efforts which flow from excessive competition brought about by excessive services.

*Id.* at 51, 132 S.E.2d at 254-55 (citation omitted). Additionally, our Supreme Court held that "the facts in each case must be separately considered and from those facts it must be determined whether public convenience and necessity requires [sic] a given service to be performed or dispensed with." *Id.* at 52, 132 S.E.2d at 255. Furthermore, our Supreme Court stated:

Upon the same facts we might have reached a different result. But it is not for this Court to find the facts or to regulate utilities. "The decisions of the Utilities Commission must be within the authority conferred by the Act, yet the weighing of the evidence and the exercise of judgment thereon as to transportation problems within the scope of its powers are matters for the Commission."

*Id.* at 54, 132 S.E.2d at 257 (citations omitted).

Here, the entire record reveals that the Commission's findings are supported by "such relevant evidence as a reasonable mind might accept as adequate" to support its conclusion that petitioner met his burden. *Coach Co.,* 19 N.C. App. at 601, 199 S.E.2d at 733.