McINERNEY v. PINEHURST AREA REALTY, INC.

[162 N.C. App. 285 (2004)]

———————————

JAMES L. McINERNEY AND ELIZABETH B. McINERNEY, PLAINTIFFS v. PINEHURST AREA REALTY, INC., A NORTH CAROLINA BUSINESS CORPORATION, DEFENDANT

No. COA03-149

(Filed 20 January 2004)

1. **Appeal and Error— standing—appeal from favorable judg-ment—alternate grounds for judgment**

   Defendant lacked standing and its appeal was dismissed where it attempted to appeal from a judgment holding that it had committed an unfair trade practice but that its conduct had not caused actual injury to plaintiffs. Defendant's assignments of error are more properly considered cross-assignments of error.

2. **Unfair Trade Practices— amending restrictive covenants—claim dismissed**

   A trial court's dismissal of an unfair trade practices claim was upheld, even though its decision rested on other grounds, where plaintiffs were homeowners and defendant the subdivision developer, plaintiffs attempted to gather support for amending the restrictive covenants to reduce defendant's influence, and defendant preemptively amended the covenants to remove the voting provision which plaintiff wished to exercise. Plaintiffs agree that the covenants in effect when they purchased their

property gave defendant a unilateral right to amend and have not pointed to a public policy or law implicated by defendant's amendment. Without some showing by plaintiffs of a reason they should not be held to the bargain they made when they purchased their property, the underlying dispute does not come within the ambit of N.C.G.S. § 75-1.1.

Appeal by plaintiffs and cross-appeal by defendant from judgment entered 19 July 2002 by Judge James M. Webb in Moore County Superior Court. Heard in the Court of Appeals 27 October 2003.

> *James L. McInerney and Elizabeth B. McInerney, pro se, plaintiffs-appellants.*
>
> *Van Camp Meacham & Newman, P.L.L.C., by Michael J. Newman, for defendant-appellant.*

GEER, Judge.

Plaintiff homeowners James L. McInerney and Elizabeth B. McInerney brought suit *pro se* alleging that defendant Pinehurst Area Realty, Inc., the developer of the community where plaintiffs own a home, committed an unfair trade practice by amending the Declaration of Protective Covenants governing the properties in that community. After a bench trial, the trial court entered judgment in favor of defendant. Although we disagree with the basis for the trial court's decision, we affirm on the ground that the acts proven by plaintiffs do not constitute unfair trade practices within the meaning of N.C. Gen. Stat. § 75-1.1 (2003).

Since this appeal involves a bench trial, the trial court's findings of fact are conclusive on appeal if there is substantial evidence to support them. *Browning v. Helff,* 136 N.C. App. 420, 423, 524 S.E.2d 95, 98 (2000). Substantial evidence is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *McConnell v. McConnell,* 151 N.C. App. 622, 626, 566 S.E.2d 801, 804 (2002) (quoting *Union Transfer and Storage Co. Inc. v. Lefeber,* 139 N.C. App. 280, 533 S.E.2d 550 (2000)). Appellate review of the trial court's conclusions of law is *de novo. Id.*

In 1980, defendant purchased the Midland Country Club ("MCC"), a private retirement community in Pinehurst, North Carolina. On 21 January 1985, defendant recorded a "Declaration of Protective

McINERNEY v. PINEHURST AREA REALTY, INC.

[162 N.C. App. 285 (2004)]

Covenants" subjecting the MCC property to certain real covenants. The Declaration provided, in pertinent part:

> Declarant . . . reserves the right to file in the Office of the Register of Deeds of Moore County, North Carolina supplementary "Declarations of Protective Covenants". The Declarant further reserves the right to file in the Office of the Register of Deeds of Moore County, North Carolina, supplementary or additional "Amendments to Declarations of Protective Covenants", and these Protective Covenants may be modified, changed or stricken from the land by vote of the Owners of 75% of all units in said subdivision.

Plaintiffs purchased a residence at MCC on 2 February 1985 expressly subject to the 21 January 1985 Declaration of Protective Covenants. Mr. McInerney, who is an attorney, testified: "We were represented by an attorney, by a local attorney, but I also personally reviewed those covenants, found some items that were objectionable, mildly objectionable, but not . . . a deal breaker, so to speak. And so I went ahead, executed the purchase agreement, and subsequently purchased the property, received a warranty deed which also stated that the property was subject to the restrictive covenants."

Twelve years later, in 1997, Mr. McInerney unsuccessfully met with defendant in an attempt to seek modification of one of the covenants. In spring 1999, Mr. McInerney decided that the covenants were drawn too heavily in favor of defendant and that "it was time to level the playing field." He initiated an effort to persuade 75% of the property owners to vote to amend the 1985 Protective Covenants to eliminate defendant's right to amend unless defendant had obtained agreement from 75% of the property owners.

On 2 June 1999, shortly after learning of Mr. McInerney's efforts, defendant recorded an "Amendment to Declaration of Protective Covenants" that deleted the provision in paragraph 9 allowing the MCC owners to modify the Protective Covenants by a vote of 75% of their membership. Defendant had not ever previously attempted to amend the 1985 Protective Covenants. The trial court found "[t]hat the motive and intent of the Defendant in the recordation on June 2, 1999 of the document titled Amendment to Declaration of Protective Covenants was in direct response to the Plaintiffs' initiatives to seek amendment of the Protective Covenants by a vote of 75% of the property owners" and "[t]hat the intent of the Defendant . . .

was to exercise exclusive control over any amendments to the Protective Covenants[.]"

Subsequently, Mr. McInerney met with representatives of defendant on multiple occasions in an attempt to resolve matters. He testified: "In each of those meetings we emphasized that reinstatement of owners' right to amend was an absolute show-stopper, that there was no other way we could settle our dispute. In all cases that reinstatement was declined; hence the need for this litigation." On 3 November 2000, however, defendant recorded a Supplementary Declaration of Protective Covenants that restored in some respects, but not all, the right of 75% of the owners to modify or change the Protective Covenants.

On 26 April 2001, Mr. McInerney filed a complaint alleging that defendant's 2 June 1999 recordation of the amendment was an unfair trade practice in violation of N.C. Gen. Stat. §§ 75-1.1 *et seq.* Because the property was a tenancy by the entirety, the trial court allowed a motion to amend made at trial to add Mrs. McInerney as a plaintiff.

Following a bench trial at the 15 July 2002 session of Moore County Superior Court, the trial court dismissed plaintiffs' action and entered judgment in favor of defendant on 19 July 2002. Although the trial court concluded that defendant's recordation of the 1999 amendment was an "unfair act" and that defendant had "engaged in conduct which amounted to an inequitable assertion of its power[,]" it also concluded that plaintiffs had "failed to demonstrate that the Defendant's conduct proximately caused actual injury to the Plaintiffs[.]" Both plaintiffs and defendant appealed from the judgment.

Plaintiffs assign error to the trial court's finding of fact that "the Plaintiffs have failed to present any evidence of actual injury[,]" and to the court's conclusion of law that "the Plaintiffs have failed to demonstrate that the Defendant's conduct proximately caused actual injury to the Plaintiffs." Defendant, on the other hand, seeks to uphold the judgment, but challenges the trial court's conclusions that defendant's amendment was an "unfair act" and that defendant "engaged in conduct which amounted to an inequitable assertion of its power."

[1] As a preliminary matter, we note that because defendant prevailed at trial, it does not have standing to appeal. Only a "party

aggrieved" may appeal from a trial court's judgment. N.C. Gen. Stat. § 1-271 (2003); N.C.R. App. P. 3(a). When, as here, a defendant prevailed below and the judgment from which the defendant appeals "is that the plaintiff recover nothing of them. . . . they are not parties aggrieved and may not appeal." *Bethea v. Town of Kenly*, 261 N.C. 730, 732, 136 S.E.2d 38, 40 (1964). We note that defendant's assignments of error are more properly considered cross-assignments of error under N.C.R. App. P. 10(d) (allowing a party to cross-assign as error "any action or omission of the trial court which was properly preserved for appellate review and which deprived the appellee of an alternative basis in law for supporting the judgment, order, or other determination from which appeal has been taken.").

**[2]** Under the Unfair and Deceptive Trade Practices Act ("Chapter 75"), "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen. Stat. § 75-1.1(a). To establish a claim under Chapter 75, a plaintiff must prove: (1) an unfair or deceptive act or practice or an unfair method of competition; (2) in or affecting commerce; (3) which proximately caused actual injury to the plaintiff or to his business. *Furr v. Fonville Morisey Realty, Inc.*, 130 N.C. App. 541, 551, 503 S.E.2d 401, 408 (1998), *disc. review improvidently granted*, 351 N.C. 41, 519 S.E.2d 314 (1999).

The trier of fact decides whether the defendant committed the alleged acts, but the court decides as a matter of law whether those facts constitute an unfair or deceptive trade practice. *United Laboratories, Inc. v. Kuykendall*, 322 N.C. 643, 664, 370 S.E.2d 375, 389 (1988). We need not address plaintiffs' arguments regarding actual injury because we hold, as defendant has argued, that the acts proven by plaintiffs are not unfair practices within the meaning of N.C. Gen. Stat. § 75-1.1.

Our Supreme Court has held that a practice is "unfair" under Chapter 75 "when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Marshall v. Miller*, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981). Alternatively, "[a] party is guilty of an unfair act or practice when it engages in conduct which amounts to an inequitable assertion of its power or position." *Johnson v. Phoenix Mut. Life Ins. Co.*, 300 N.C. 247, 264, 266 S.E.2d 610, 622 (1980), *overruled on other grounds, Myers & Chapman, Inc. v. Thomas G. Evans, Inc.*, 323 N.C. 559, 374 S.E.2d 385 (1988).

Plaintiffs' contention that defendant acted unfairly is not based on any argument by plaintiffs that defendant's 1999 amendment violated law or public policy apart from Chapter 75:

THE COURT: Well, what statute or State or federal constitutional provision do you suggest [defendant's amendment] violates?

MR. MCINERNEY: Chapter 75-1.1 of the North Carolina Statutes which proclaims that unfair or deceptive acts or practices in or affecting commerce are declared unlawful. . . .

. . . .

THE COURT: . . . . Let me ask you this question, Mr. McInerney: Do you contend that the conduct of the defendants violates any other law or constitutional right other than what you contend in Chapter 75?

MR. MCINERNEY: No, Your Honor. . . . [Defense counsel] makes great use of the word "unfettered" in describing [defendant's] right to amend the covenants. That is not an unfettered right. By the terms and on the face of the covenants its [sic] unfettered, but any contract—I suppose it's actually considered in the nature of a contract—any contract does not permit illegal, unlawful actions. And so that right is not unfettered. As [defendant's expert witness] testified, it is—there are certain things that simply may not be done.

THE COURT: Well, that would involve constitutional violations.

MR. MCINERNEY: Well, those are constitutional violations, yes. . . . I don't contend it's a constitutional matter. What I contend is that this is a violation of Chapter 75 which precludes unfair acts in business or commerce.

At trial, Mr. McInerney agreed with defendant that the 1985 Declaration of Protective Covenants gave defendant a unilateral right to amend the Protective Covenants and that the Protective Covenants contained no exceptions to that right.

On appeal, plaintiffs likewise do not argue that defendant's actions constituted a breach of contract or violated any public policy apart from Chapter 75's prohibition against "unfair" acts. Plaintiffs

appear to argue instead that even though they agree that the 1985 Declaration permitted defendant to amend the Protective Covenants, defendant's action in doing so was "unfair" because it was an inequitable exercise of defendant's power. Defendant was, however, exercising a right that plaintiffs agree was authorized under the 1985 Declaration.

Our Supreme Court recently recognized that parties to a restrictive covenant "may structure the covenants, and any corresponding enforcement mechanism, in virtually any fashion they see fit." *Wise v. Harrington Grove Cmty. Ass'n*, 357 N.C. 396, 401, 584 S.E.2d 731, 735 (2003). It is not for the courts to rewrite the parties' agreement should one of the parties, at a later date, desire a change, as this Court pointed out in *Rosi v. McCoy*, 79 N.C. App. 311, 314, 338 S.E.2d 792, 794 (1986), *aff'd in part and modified in part on other grounds*, 319 N.C. 589, 356 S.E.2d 568 (1987):

> [P]laintiffs agreed to accept the deed. subject to the right of the developers to modify or amend any of the restrictions. This right appeared in the restrictions in unambiguous language. The developers have exercised that right and have amended the restrictions on defendants' property. The rights of the parties must be determined by the agreement they voluntarily made, and plaintiffs cannot now be judicially relieved of an improvident bargain which provided for such amendments.

Since plaintiffs, when purchasing their property, agreed to defendant's right to amend, there can be nothing "unfair" in defendant's subsequent exercise of that right. *See Tar Heel Indus., Inc. v. E. I. DuPont de Nemours & Co.*, 91 N.C. App. 51, 57, 370 S.E.2d 449, 452 (1988) ("No Chapter 75 claim exists against [defendant] for exercising its right to terminate the contract.").

Although plaintiffs contend that defendant's contractual rights were "not unfettered," noting that defendant could not exercise its rights in a racially discriminatory manner or in breach of other restrictive covenants, plaintiffs have not pointed to any public policy or law that the amendment in this case implicates. Despite the expansive language of Chapter 75, North Carolina courts and federal courts applying North Carolina law "have consistently recognized that § 75-1.1 does not cover every dispute between two parties." *Hageman v. Twin City Chrysler-Plymouth, Inc.*, 681 F. Supp. 303, 306-07 (M.D.N.C. 1988). Without some showing by plaintiffs of a reason why they should not be held to the bargain they made when they

purchased their property, the underlying dispute in this case does not come within the ambit of N.C. Gen. Stat. § 75-1.1.

Although its decision rested on other grounds, the trial court properly dismissed plaintiffs' claim. Therefore, we affirm. *See State ex rel. East Lenoir Sanitary Dist. v. City of Lenoir*, 249 N.C. 96, 99, 105 S.E.2d 411, 413 (1958) ("If the correct result has been reached, the judgment should not be disturbed even though the court may not have assigned the correct reasons for the judgment entered.").

Affirmed, as to plaintiffs' appeal.

Dismissed, as to defendant's cross-appeal.

Chief Judge EAGLES and Judge HUNTER concur.