**HEDGEPETH v. LEXINGTON STATE BANK**

[228 N.C. App. 49 (2013)]

RONNIE C. HEDGEPETH AND WIFE, SHIRA C. HEDGEPETH, PLAINTIFFS
v.
LEXINGTON STATE BANK AND TRUSTEE SERVICES, INC., TRUSTEE, DEFENDANTS

No. COA12-1057

Filed 18 June 2013

1. **Appeal and Error—subject matter jurisdiction—no unresolved claims—final judgment—appeal not interlocutory**

    The Court of Appeals had jurisdiction to hear plaintiff's appeal. Although the trial court had ordered that the Massies be joined as defendants, plaintiffs never effectively sued the Massies and, therefore, there were no unresolved claims against the Massies and the judgment on appeal was a final judgment.

2. **Unfair Trade Practices—standing—no fraudulent manner**

    The trial court did not err by dismissing plaintiff's unfair and deceptive trade practices claim against defendants. Although the trial court erred in concluding that plaintiff's lacked standing, the trial court's order of dismissal was still proper because plaintiff's evidence failed to show that defendants acted in a fraudulent manner towards plaintiffs.

Appeal by plaintiffs from judgment entered 23 April 2012 by Judge Mark E. Klass in Davidson County Superior Court. Heard in the Court of Appeals 9 January 2013.

*Stephen E. Lawing for plaintiffs-appellants.*

*Brinkley Walser, PLLC, by Stephen D. Barnhill, for defendants-appellees.*

GEER, Judge.

Plaintiffs Ronnie C. Hedgepeth and Shira C. Hedgepeth appeal from a judgment dismissing, pursuant to Rule 41(b) of the Rules of Civil Procedure, their claim for unfair and deceptive trade practices ("UDTP") against defendants Lexington State Bank ("LSB") and Trustee Services, Inc. Although we agree with plaintiffs that the trial court erred in concluding that they lacked standing, we hold that dismissal was nevertheless proper because plaintiffs failed to present evidence that defendants committed an unfair and deceptive trade practice that harmed them.

## Facts

The Hedgepeths were the sole owners of Business Cabling, Inc. ("BCI"). BCI obtained a loan from LSB in the amount of $75,000.00 secured by a deed of trust on the Hedgepeths' home. That loan had a maturity date of 14 January 2002, but was extended. On 29 April 2004, BCI obtained a second loan from LSB in the amount of $117,600.00 to secure performance bonds for two jobs BCI was doing for the Winston-Salem Forsyth County Schools.

The second loan was secured by a deed of trust on the home of Ms. Hedgepeth's parents, James Kent Caldwell and Helen Caldwell, who lived in Montgomery County, Virginia. The Caldwells' deed of trust included language providing that the deed of trust did not just secure the $117,600.00 amount, but also secured "any other indebtedness or liability of the above-named Borrower," which was identified as BCI, so long as the indebtedness was incurred for business, business investment, or agricultural purposes.

The $117,600.00 note was renewed on 10 June 2005, but was ultimately marked paid by LSB on 9 March 2006 after the performance bonds were no longer necessary. As of April 2006, however, BCI still had an outstanding debt of $73,936.00 on the first loan, which had matured on 23 February 2006. BCI also had an outstanding balance of $20,165.00 on another long term loan that was due to mature on 20 April 2006.

On 4 April 2006, LSB wrote the Hedgepeths and the Caldwells a letter stating that it was "unable to renew these notes, with their present structure." LSB, however, offered a commitment letter that consolidated the two debts into a single loan of $93,561.00. The new loan would be secured by (1) the existing deed of trust in the amount of $25,000.00 on the Hedgepeths' home, (2) a security agreement on accounts receivable and equipment from BCI, (3) the existing deed of trust on the Caldwells' home, and (4) an additional deed of trust in the amount of $70,000.00 on the Hedgepeths' home. The consolidated loan would be personally guaranteed by the Hedgepeths and the Caldwells. The commitment letter provided that all accrued interest and principal would be due in a single payment on 14 July 2006.

At that time, Ms. Hedgepeth met with Tom Thompson, Vice President of Credit Analyst-Risk Assessment for LSB. He explained to her that the deed of trust on her parents' home had not been released with the cancellation of the $117,600.00 promissory note, but rather the Caldwells' deed of trust secured BCI's other indebtedness as well. The Hedgepeths claim that LSB threatened to start foreclosure proceedings

on the Caldwells' home and property unless the Hedgepeths signed the new commitment letter. According to the Hedgepeths, because of the threat of foreclosure, on 20 April 2006, they signed the commitment letter and the additional deed of trust on their own home.

When the consolidated loan matured on 2 August 2006, the parties were unable to agree to terms for a renewal. LSB initiated foreclosure actions. On 4 January 2007, Billie D. Massie, a neighbor of the Caldwells, contacted LSB regarding purchasing the promissory note for the consolidated loan in order to forestall the foreclosure proceedings scheduled for 11 January 2007.

On 9 January 2007, the Hedgepeths filed this action against LSB and Trustee Services, asserting claims for fraud, UDTP under N.C. Gen. Stat. § 75-1.1, violation of the Fair Debt Collection Practices Act, harassment or abuse in violation of 15 U.S.C. § 1692d, unfair practices under 15 U.S.C. § 1692f(6), and false representations under 15 U.S.C. § 1692e(10). The Hedgepeths also sought a restraining order and injunction preventing foreclosure on both their home and the Caldwells' home.

On 10 January 2007, the trial court issued a temporary restraining order prohibiting LSB and Trustee Services from foreclosing on the two homes. Also on 10 January 2007, Mr. Massie purchased the Caldwells' "collateral note and components." The temporary restraining order was extended on 22 January 2007. In an order entered 29 January 2007, the trial court dissolved the temporary restraining order. The 29 January 2007 order stated that at a hearing on the order, LSB and Trustee Services showed that the foreclosure proceeding that was the subject of the temporary restraining order had been voluntarily dismissed without prejudice, leaving nothing further to be heard in connection with the restraining order.

On 8 June 2009, the trial court heard defendants LSB and Trustee Services' motion to dismiss pursuant to Rule 12(b)(6) of the Rules of Civil Procedure. It appears from the record that the trial court orally stated that it was dismissing all the Hedgepeths' claims against LSB and Trustee Services with the exception of the claim for fraud and UDTP. A written order was not, however, immediately entered with respect to that ruling.

On 22 June 2009, the trial court granted the Hedgepeths' motion to amend their pleadings to add Billy Dan Massie and Ruth G. Massie as defendants. On 4 August 2009, plaintiffs filed a verified pleading entitled "Amended Complaint, Third Party Complaint." With respect to LSB and Trustee Services, the amended complaint appears only to assert a

claim for fraud and UDTP, consistent with the trial court's oral ruling on defendants' motion to dismiss. Although the Massies were supposed to be added as defendants, plaintiffs purported to make them "Third-Party Defendants." In addition, the amended complaint did not assert any actual claims against the Massies, but rather included a statement regarding jurisdiction and then three "AFFIRMATIVE DEFENSES," including lack of good faith, paper overdue and dishonored, and actual notice of defenses and adverse claims.

On 26 January 2012, the trial court entered its written order dismissing all of the Hedgepeths' claims against LSB and Trustee Services with the exception of the UDTP claim. The court reserved ruling on the request for an injunction of the foreclosure. The case then proceeded to trial.

The pretrial conference order was entered 1 February 2012. The Massies were not included in the caption, and the order did not make any reference to them as being parties. The order included a stipulation that "all parties are properly before the court" and "there is no question as to misjoinder or nonjoinder of parties."

The trial court conducted a bench trial on 1 February 2012 involving only the Hedgepeths, LSB, and Trustee Services. At the close of the Hedgepeths' evidence, the trial court granted defendants' motion to dismiss pursuant to Rule 41(b) of the Rules of Civil Procedure.

The trial court entered a Judgment on 8 March 2012 finding that the notes and deeds of trust signed by the Hedgepeths and dated 11 February 2003 and 27 April 2006 had been marked satisfied and should be cancelled. It appears from the transcript that this judgment was considered necessary because LSB, having assigned the notes and deeds of trust to the Massies, did not believe it could mark the notes "satisfied," while the register of deeds did not consider the available paperwork sufficient to allow the Massies to mark all of the notes satisfied. In this judgment, therefore, the trial court concluded that the notes and deeds of trust as recorded in the Office of the Register of Deeds for Davidson County should be cancelled, and it ordered that the judgment be "registered in the proper county; and, Plaintiff shall produce to the register a copy hereof, certified by the clerk of the court in which it is enrolled, under the seal of the court, and the register shall record both the judgment and certificate of satisfaction."

The trial court entered a separate judgment on 23 April 2012 addressing the Hedgepeths' UDTP claim. The order found that "[a]ll of the causes of action alleged in the Complaint except for the First Count for Fraud and Unfair Trade Practices have heretofore been dismissed by the Court."

The court proceeded to dismiss as well the fraud and UDTP claim on the grounds (1) that "[t]he Hedgepeths do not have standing to bring into question the deed of trust executed by the Caldwells on April 29, 2004" and (2) that the Hedgepeths had failed to sufficiently prove they sustained any damages. The court, therefore, concluded "[t]he Defendants are entitled to have judgment of dismissal of the remaining claim." The Hedgepeths timely appealed to this Court from that judgment.

## Discussion

**[1]** We first address this Court's jurisdiction. We note that the trial court ordered that the Massies be joined as defendants and that the Hedgepeths filed an amended complaint that purported to add the Massies in some capacity as parties to the action. The record on appeal includes evidence that the Massies were served with this document. If the Massies were in fact defendants, then this appeal would be interlocutory since nothing in the record resolves any claim against the Massies.

However, the trial proceeded in this action as if the Massies were not parties. The pretrial conference order's stipulations indicated that only the Hedgepeths, LSB, and Trustee Services were parties and that no one else needed to be made part of the action. Further, the transcript contains no mention of the Massies ever having been parties. Since this action has proceeded as if the Massies were never parties and since the amended complaint that purported to make the Massies "Third-Party Defendants" -- a status that would apply if LSB and Trustee Services had asserted claims against the Massies -- does not include any actual claims against the Massies, we hold that the Hedgepeths never effectively sued the Massies and, therefore, the judgment on appeal is a final judgment. This Court, therefore, has jurisdiction over this appeal.

**[2]** On appeal, the Hedgepeths challenge only the dismissal of their UDTP claim against LSB and Trustee Services after they rested their case. Rule 41(b) of the North Carolina Rules of Civil Procedure provides in pertinent part:

> After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court

renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a).

"When a motion to dismiss pursuant to [Rule] 41(b) is made, the judge becomes both the judge and the jury and he must consider and weigh all competent evidence before him." *Dealers Specialties, Inc. v. Neighborhood Housing Servs., Inc.*, 305 N.C. 633, 640, 291 S.E.2d 137, 141 (1982). "The trial judge in a non-jury case does not weigh the evidence in the light most favorable to the plaintiff as he does on a motion for directed verdict in a jury trial." *Progressive Sales, Inc. v. Williams, Willeford, Boger, Grady & Davis*, 86 N.C. App. 51, 55, 356 S.E.2d 372, 375 (1987).

The Hedgepeths first contend that the trial court erred in concluding that they did not have standing. In deciding that the Hedgepeths did not have standing, the trial court made the following relevant determinations:

5.   The Caldwells are not parties to this action and did not sign the April 27, 2006 note, or anything else in connection with that loan.

6.   The Hedgepeths do not have standing to bring into question the deed of trust executed by the Caldwells on April 29, 2004.

We agree with the Hedgepeths that these determinations suggest that the trial court misunderstood the theory underlying the Hedgepeths' UDTP claim when it concluded they lacked standing.

The Hedgepeths contend that LSB and Trustee Services fraudulently represented to the Hedgepeths that they had a right to foreclose on the Caldwells' deed of trust when, according to the Hedgepeths, LSB and Trustee Services had no legal right to do so. The Hedgepeths then argue that LSB and Trustee Services' fraudulent threats to foreclose on the Caldwells' home forced the Hedgepeths to enter into a new promissory note and grant a new deed of trust on the Hedgepeths' own home that increased the Hedgepeths' personal liability.

In other words, the Hedgepeths are alleging that LSB and Trustee Services fraudulently induced them to enter into a contract that nearly cost the Hedgepeths their own home. Contrary to the analysis of the trial court, this theory of liability does not call into question the Caldwells' deed of trust. The Hedgepeths' UDTP claim hinges on an allegedly fraudulent representation made to the Hedgepeths that they contend caused them harm. The UDTP claim does not depend on any contention that

the Caldwells' deed of trust constituted a UDTP or that LSB and Trustee Services mistreated the Caldwells.

With respect to standing for UDTP claims, N.C. Gen. Stat. § 75-16 (2011) provides in relevant part:

> If *any person* shall be injured or the business of any person, firm or corporation shall be broken up, destroyed or injured by reason of any act or thing done by any other person, firm or corporation in violation of the provisions of this Chapter, such person, firm or corporation so injured shall have a right of action on account of such injury done . . . .

(Emphasis added.) Here, the Hedgepeths assert that they were injured by a UDTP directed at the Hedgepeths.

The Hedgepeths fall within the scope of N.C. Gen. Stat. § 75-16 and, therefore, we hold the trial court erred in concluding that the Hedgepeths lacked standing.[1] *See Marshall v. Miller*, 302 N.C. 539, 543, 276 S.E.2d 397, 400 (1981) ("In enacting G.S. 75-16 and G.S. 75-16.1, our Legislature intended to establish an effective private cause of action for aggrieved consumers in this State."); *Hyde v. Abbott Laboratories, Inc.*, 123 N.C. App. 572, 584, 473 S.E.2d 680, 688 (1996) (noting legislative aims for broad application of Chapter 75 and allowing for suits by indirect purchases under Chapter 75).

Nonetheless, even though the trial court's basis for the dismissal was incorrect, the trial court's order of dismissal was still proper because the Hedgepeths' evidence failed to show that LSB and Trustee Services acted in a fraudulent manner towards the Hedgepeths. To prevail on a UDTP claim under Chapter 75 of our General Statutes, a " '[p]laintiff must show: (1) [the] defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff.' " *Kewaunee Scientific Corp. v. Pegram*, 130 N.C. App. 576, 580, 503 S.E.2d 417, 420 (1998) (quoting *Pleasant Valley Promenade v. Lechmere, Inc.*, 120 N.C. App. 650, 664, 464 S.E.2d 47, 58 (1995)).

A practice is properly deemed unfair "when it offends established public policy as well as when the practice is immoral, unethical,

---

1. The trial court's confusion is understandable given our reading of both briefs and the transcript in this case.

oppressive, unscrupulous, or substantially injurious to consumers . . . [or] amounts to an inequitable assertion of . . . power or position." *McInerney v. Pinehurst Area Realty, Inc.*, 162 N.C. App. 285, 289, 590 S.E.2d 313, 316–17 (2004) (internal citations and quotation marks omitted). The question whether a particular practice is unfair or deceptive is a legal one reserved for the court. *Martin Marietta Corp. v. Wake Stone Corp.*, 111 N.C. App. 269, 282–83, 432 S.E.2d 428, 436 (1993), *aff'd per curiam*, 339 N.C. 602, 453 S.E.2d 146 (1995).

The Hedgepeths' UDTP claim is predicated upon their contention that LSB and Trustee Services had no legal right to assert that they could foreclose on the Caldwells' deed of trust. The Hedgepeths believe that the Caldwells' deed of trust provided collateral for the $117,600.00 promissory note and because LSB marked the $117,600.00 promissory note "paid," LSB and Trustee Services had no right to foreclose on the Caldwells' deed of trust.

This argument overlooks the plain language of the deed of trust. The deed of trust on the Caldwells' home was not limited to providing security for the $117,600.00 promissory note. The deed of trust provided that it also "secure[d] the payment of any other indebtedness or liability of the above-named Borrower . . . made by Noteholder to Borrower . . . ." The deed of trust identifies the "Borrower" as BCI. Thus, by the deed of trust's terms, the Caldwells were securing not only the $117,600.00 promissory note, but also any other existing indebtedness of BCI.

At the time the Caldwells signed the deed of trust on their home, BCI had a balance due on its first loan with LSB. The Caldwells' deed of trust, by its terms, secured that existing debt as well as the $117,600.00. As a result, when the $117,600.00 debt was satisfied, it did not result in cancellation of the Caldwells' deed of trust, and, contrary to the Hedgepeths' claim, LSB and Trustee Services were entitled to foreclose on the Caldwells' deed of trust if BCI defaulted on that first loan. *See In re Foreclosure of Goforth Properties, Inc.*, 334 N.C. 369, 375, 432 S.E.2d 855, 859 (1993) ("Unambiguous language in a deed of trust is controlling on the issue of whether the instrument raises a legal defense to foreclosure.").

The Hedgepeths' reliance on *Tr. Servs., Inc. v. R.C. Koonts & Sons Masonry, Inc.*, 202 N.C. App. 317, 688 S.E.2d 737 (2010), as establishing that LSB and Trustee Services engaged in a fraudulent act, is misplaced. *R.C. Koontz* involved a deed of trust granted to LSB with Trustee Services acting as trustee, but it addressed whether the language of a guaranty secured by the deed of trust made the guarantors liable for

future advances to a third party. *Id.* at 317-18, 322, 688 S.E.2d at 738-39, 741. Although the deed of trust at issue did include a future advances clause, this Court concluded, based on the plain language of the clause, that, in order to be secured by the deed of trust, the future advances had to be made to the grantors of the deed of trust and not to a third party. *Id.* at 322, 688 S.E.2d at 741. Accordingly, LSB and Trustee Services were not entitled to foreclose on the deed of trust when the third party defaulted on a promissory note. *Id.* at 323, 688 S.E.2d at 741.

Here, in contrast, the plain language of the Caldwells' deed of trust specified that the deed of trust secured existing indebtedness of the third party, BCI. Because the Caldwells' deed of trust did indeed authorize foreclosure if BCI defaulted on a loan other than the $117,600.00 promissory note, the Hedgepeths have not shown that they were fraudulently induced to enter into the letter commitment that resulted in their granting LSB an additional deed of trust on the Hedgepeths' home.

The Hedgepeths have, therefore, failed to point to any unfair or deceptive act that harmed them, and we affirm the trial court's dismissal on that alternative ground. *See Walker v. Branch Banking & Trust Co.,* 133 N.C. App. 580, 584, 515 S.E.2d 727, 730 (1999) (holding efforts at collection despite plaintiff's contesting his having signed instrument did not constitute UDTP in relevant part because "[i]t was not unreasonable to make a demand for payment of the promissory note against plaintiff, because the guaranty agreement provided, among other things, that '[t]his obligation and liability on the part of the undersigned [guarantor] shall be . . . payable immediately upon demand without recourse first having been had by Bank against the Borrower . . .' "). Because of this conclusion, we need not address the trial court's conclusion that the Hedgepeths failed to establish damages.

Affirmed.

Judges BRYANT and CALABRIA concur.