Moose v. Allegacy Fed. Credit Union, 2021 NCBC 30.

STATE OF NORTH CAROLINA

FORSYTH COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
20 CVS 4279

TERRI MOOSE, individually and on
behalf of all others similarly situated,

        Plaintiff,

v.

ALLEGACY FEDERAL CREDIT
UNION,

        Defendant.

**ORDER AND OPINION ON
DEFENDANT'S MOTION TO DISMISS**

1. Terri Moose has a checking account with Allegacy Federal Credit Union. Over the past five years, she has incurred more than $10,000 in overdraft fees. In this case, she claims that Allegacy's fee practices are unlawful and has sued individually and on behalf of a putative class.

2. Allegacy has moved to dismiss the complaint under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. For the following reasons, the Court **DENIES** the motion.

> *Morgan and Morgan Complex Litigation Group, by Jean Sutton Martin, Branstetter Stranch & Jennings, PLLC, by Gerard J. Stranch, and Rhine Law Firm, PC, by Martin A. Ramey, for Plaintiff Terri Moose.*
>
> *Spilman Thomas & Battle, PLLC, by Lee D. Denton, Jeffrey D. Patton, and Bruce M. Jacobs, for Defendant Allegacy Federal Credit Union.*

Conrad, Judge.

# I.
# BACKGROUND

3.     The following background assumes that the allegations in the amended complaint are true.  (Am. Compl., ECF No. 41.)[1]

4.     The overdraft fees at issue involve debit-card transactions.  A brief explanation of the mechanics of these transactions may be helpful.  When a cardholder uses a debit card to make a purchase, no money changes hands at the time of sale.  Rather, the merchant asks the bank (here, Allegacy) to authorize the transaction.  (*See* Am. Compl. ¶ 24.)  By authorizing the transaction, Allegacy effectively promises to pay the merchant later.  (*See* Am. Compl. ¶ 27.)  This process happens in the blink of an eye thanks to modern telecommunications, but days may pass before the merchant requests payment.  Eventually, Allegacy must settle the transaction by taking funds from the cardholder's account and paying the merchant.  (*See* Am. Compl. ¶ 26.)

5.     The period between authorization and settlement is a source of uncertainty.  Neither Allegacy nor the cardholder controls when the merchant will seek payment.  During that time, Allegacy may process checks, account drafts, and new debit-card purchases that reduce the cardholder's account balance.  (*See* Am. Compl. ¶ 20.)  As a result, the cardholder may not have enough money in her account to pay for a transaction at the time of settlement even though Allegacy authorized the transaction while the account had sufficient funds.  (*See* Am. Compl. ¶ 14.)  Moose refers to these

---

[1] Moose filed her amended complaint in October 2020 but, due to a clerical error, did not post it to the Court's electronic docket until 26 April 2021.

transactions as "Authorize Positive, Settle Negative Transactions," or "APSN Transactions." (Am. Compl. ¶¶ 11, 12.)

6.     According to Moose, her account agreement with Allegacy does not permit overdraft fees for APSN transactions.  Under the agreement, Allegacy uses a cardholder's "available balance to determine whether there are sufficient funds in your account to pay items," including debit-card transactions.  (Am. Compl. Ex. A at 6, ECF No. 41.1 ["Account Agrmt."].)[2]  The "available balance" is defined as "the amount of money in your account that is available for you to use[,]" which is not necessarily the same as the actual or "current" balance.  (Account Agrmt. 6.)  In the course of authorizing a debit-card transaction, Allegacy "places a hold on funds in your account when the authorization is completed.  The 'authorization hold' will reduce your available balance by the amount authorized" but will not immediately reduce the current balance.  (Account Agrmt. 7.)  When Allegacy later settles the transaction, it "result[s] in a reduction in the current balance."  (Account Agrmt. 7.)

7.     Moose takes this to mean that she cannot be charged overdraft fees for any transaction authorized based on a positive available balance.  As she puts it, her account "will always have sufficient funds available to cover these transactions because [Allegacy] has already sequestered these funds for payment."  (Am. Compl. ¶ 12; *see also* Am. Compl. ¶ 16.)  This remains true, she alleges, even if Allegacy authorizes "subsequent, intervening transactions" that overdraw the account by further reducing the available balance below zero.  (Am. Compl. ¶ 17.)  In that

_____

[2] All quotations from the account agreement omit its occasional use of boldface type.

circumstance, the intervening transaction may trigger an overdraft fee (because it was authorized despite a lack of available funds), but the original transaction should not (because it was authorized based on sufficient funds).

8. In practice, though, Allegacy assesses overdraft fees for APSN transactions. As alleged, Allegacy reviews each debit-card transaction "both at the time of authorization and later at the time of settlement." (Am. Compl. ¶ 46.) Despite placing a hold on funds at the time of authorization, Allegacy charges an overdraft fee if intervening transactions drop the available balance below zero at the time of settlement. (*See* Am. Compl. ¶¶ 18, 19.) Moose identifies four transactions for which she incurred overdraft fees even though Allegacy had authorized them based on sufficient funds. (*See* Am. Compl. ¶¶ 71–74.)

9. Moose asserts individual and putative class claims for breach of the account agreement, unjust enrichment, and unfair or deceptive trade practices under N.C.G.S. § 75-1.1. Allegacy has moved to dismiss the complaint in its entirety. (Mot. to Dismiss, ECF No. 14.) After full briefing and a hearing in March 2021, the motion is ripe for disposition.

II.
ANALYSIS

10. A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of the complaint." *Isenhour v. Hutto*, 350 N.C. 601, 604 (1999) (citation and quotation marks omitted). The motion should be granted only when "(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses

some fact that necessarily defeats the plaintiff's claim." *Corwin v. Brit. Am. Tobacco PLC*, 371 N.C. 605, 615 (2018) (citation and quotation marks omitted). In deciding the motion, the Court must treat the well-pleaded allegations of the complaint as true and view the facts and permissible inferences "in the light most favorable to" the nonmoving party. *Sykes v. Health Network Sols., Inc.*, 372 N.C. 326, 332 (2019) (citation and quotation marks omitted).

## A. Breach of Contract

11. Moose claims that Allegacy breached the express terms of the account agreement and the implied covenant of good faith and fair dealing when it assessed overdraft fees on transactions that had been previously authorized based on sufficient available funds. (*See* Am. Compl. ¶¶ 96, 101.) Allegacy moves to dismiss the claim on the ground that the account agreement permits the alleged fees. (*See* Br. in Supp. 8–13, ECF No. 8.)

12. "The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." *Poor v. Hill*, 138 N.C. App. 19, 26 (2000). "In every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement." *Bicycle Transit Auth., Inc. v. Bell*, 314 N.C. 219, 228 (1985) (citation and quotation marks omitted).

13. The question here is one of contract interpretation. "A contract that is plain and unambiguous on its face will be interpreted by the court as a matter of law." *Schenkel & Shultz, Inc. v. Hermon F. Fox & Assocs., P.C.*, 362 N.C. 269, 273 (2008).

When the contract is ambiguous, its interpretation is a question of fact for the jury. *See id.* "An ambiguity exists in a contract when either the meaning of words or the effect of provisions is uncertain or capable of several reasonable interpretations." *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 525 (2012) (citation and quotation marks omitted).

14. In short, Allegacy interprets the agreement to state that the designated time for deciding whether a cardholder has enough funds to cover a transaction is when the merchant requests payment, not when it requests authorization. On that basis, Allegacy contends that the amended complaint does not state a claim for breach of the agreement even if the allegations are taken as true. (*See* Br. in Supp. 11–12.) In response, Moose insists that the agreement does not allow Allegacy to impose overdraft fees at a time other than when authorization is requested and given and that, alternatively and at a minimum, the agreement is ambiguous. (Opp'n 6–9, ECF No. 10.)

15. Upon careful review, the Court concludes that the account agreement is ambiguous. The agreement states that Allegacy's "determination of an insufficient available account balance may be made at any time between presentation and [Allegacy's] midnight deadline with only one (1) review of the account required." (Account Agrmt. 6.) It further states that Allegacy may charge a fee for insufficient funds "each time an item is presented against your available balance." (Account Agrmt. 6.) Allegacy construes this to mean that the overdraft determination occurs at the time a merchant presents an item for payment. But the terms "presentation"

and "presented" are not defined. And it is unclear from context whether the "time an item is presented" necessarily means presentation for payment or may mean presentation for authorization.

16. Indeed, for purposes of the debit-card transactions at issue, the merchant must submit requests for both authorization and payment. Upon receiving an authorization request, Allegacy "places a hold on funds" and reduces the "available balance by the amount authorized." (Account Agrmt. 7.) Thus, a cardholder may reasonably believe that debit-card transactions are "presented against [her] available balance"—and therefore assessed for sufficient funds—at the time of authorization.

17. The definition of available balance—the "amount of money in your account that is available for you to use"—bolsters Moose's interpretation. (Account Agrmt. 6.) From the cardholder's perspective, her use of funds occurs at the point of sale. This definition reasonably suggests that she may spend whatever is available "to use" at the time of a given purchase without fear of incurring an overdraft fee for that purchase. Allegacy's interpretation, by contrast, is counterintuitive because it requires assessing the availability of funds long after the cardholder has used them at the point of sale.

18. To be sure, the account agreement warns cardholders that "[t]he amount of an authorization hold may differ" from the actual purchase amount. (Account Agrmt. 7.) Restaurant bills are a good example. A restaurant may request authorization for the billed amount but not any tip added to the bill. As a result, when the restaurant later seeks payment, the settled amount (bill plus tip) will exceed the amount of the

authorization hold (bill only). (*See* Account Agrmt. 7.) At the hearing, Moose's counsel stressed that these types of transactions are not at issue and might legitimately result in an overdraft fee. In addition, by warning cardholders that a fee may result if the authorization hold doesn't cover the whole purchase, the account agreement implies that there is no such risk when the authorized amount and the settlement amount are the same.

19. Contracts must be construed as a whole. *See, e.g., Crescent Foods, Inc. v. Evason Pharms., Inc.*, 2016 NCBC LEXIS 76, at *9 (N.C. Super. Ct. Oct. 5, 2016). Looking at the entirety of the account agreement, its terms are "capable of several reasonable interpretations." *Variety Wholesalers*, 365 N.C. at 525. Thus, the agreement is ambiguous, and the Court denies Allegacy's motion to dismiss the claim for breach of contract.[3]

## B. Unjust Enrichment

20. Moose asserts her claim for unjust enrichment "in the alternative to" her claim for breach of contract. (Am. Compl. ¶ 106.) Allegacy seeks to dismiss this claim on the ground that the parties' relationship is governed by an express contract. (*See* Br. in Supp. 14.)

---

[3] There have been many similar cases around the country. Decisions in these cases, which are not controlling, highlight the frequency with which ambiguities arise in contracts between banks and cardholders when defining overdraft practices. *See, e.g., Roberts v. Cap. One, N.A.*, 719 F. App'x 33, 34–37 (2d Cir. 2017) (unpublished) (reversing dismissal of claim for breach of contract); *Hash v. First Fin. Bancorp*, 2021 U.S. Dist. LEXIS 42711, at *8–21 (S.D. Ind. Mar. 8, 2021) (denying motion to dismiss); *Lussoro v. Ocean Fin. Fed. Credit Union*, 456 F. Supp. 3d 474, 482–86 (E.D.N.Y. 2020) (denying motion to dismiss).

21. As a rule, when the parties have made an express contract, the law will not imply one "with reference to the same matter." *Vetco Concrete Co. v. Troy Lumber Co.*, 256 N.C. 709, 713 (1962) (citations omitted). At this early stage, however, the Court is persuaded that Moose may plead her claim for unjust enrichment in the alternative to her claim for breach of an express contract. *See, e.g.*, N.C. R. Civ. P. 8(e)(2); *Gao v. Sinova Specialties, Inc.*, 2018 NCBC LEXIS 71, at *34–36 (N.C. Super. Ct. July 16, 2018) (denying motion to dismiss claim for unjust enrichment when pleaded in the alternative to claim for breach of contract); *Can-Dev, ULC v. SSTI Centennial, LLC*, 2018 NCBC LEXIS 9, at *21–23 (N.C. Super. Ct. Jan. 25, 2018) (same); *Strategic Mgmt. Decisions, LLC v. Sales Performance Int'l, LLC*, 2017 NCBC LEXIS 69, at *15–16 (N.C. Super. Ct. Aug. 7, 2017) (same).

22. The Court therefore denies Allegacy's motion to dismiss the claim for unjust enrichment.

## C. Section 75-1.1

23. Moose's final claim is for unfair or deceptive trade practices under N.C.G.S. § 75-1.1. Allegacy argues that the claim must be dismissed because the complaint alleges nothing more than a mere breach of contract, which is insufficient to plead a violation of section 75-1.1. (*See* Br. in Supp. 15–17.)

24. Section 75-1.1 was "designed to provide consumers with a remedy for injuries done to them by dishonest and unscrupulous business practices." *Hester v. Hubert Vester Ford, Inc.*, 239 N.C. App. 22, 30 (2015). To state a claim, a plaintiff must allege an unfair or deceptive act or practice in or affecting commerce, resulting

in actual injury. *See McLamb v. T.P. Inc.*, 173 N.C. App. 586, 593 (2005). A "party is guilty of an unfair act or practice when it engages in conduct which amounts to an inequitable assertion of its power or position." *McInerney v. Pinehurst Area Realty, Inc.*, 162 N.C. App. 285, 289 (2004) (citation and quotation marks omitted). "Finally, in determining whether a particular act or practice is deceptive, its effect on the average consumer is considered." *Becker v. Graber Builders, Inc.*, 149 N.C. App. 787, 794 (2002).

25. It is well established that "a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under N.C.G.S. § 75-1.1." *Branch Banking & Tr. Co. v. Thompson*, 107 N.C. App. 53, 62 (1992) (citations omitted). The plaintiff must also allege "some type of egregious or aggravating circumstances" to elevate the breach to an unfair or deceptive act. *Dalton v. Camp*, 353 N.C. 647, 657 (2001) (citations, quotation marks, and emphasis omitted). Examples include "forged documents, lies, and fraudulent inducements." *Forest2Market, Inc. v. Arcogent, Inc.*, 2016 NCBC LEXIS 3, at *14 (N.C. Super. Ct. Jan. 5, 2016) (citations and quotation marks omitted); *see also, e.g.*, *Alamance Fam. Prac., P.A. v. Lindley*, 2018 NCBC LEXIS 83, at *25–26 (N.C. Super. Ct. Aug. 14, 2018); *Post v. Avita Drugs, LLC*, 2017 NCBC LEXIS 95, at *10 (N.C. Super. Ct. Oct. 11, 2017).

26. Among other things, the amended complaint alleges that Allegacy "misleadingly and deceptively misrepresents" its overdraft practices; "exploits its contractual discretion by implementing these practices to gouge its customers";

employs a "scheme to extract funds from account holders"; carries out this scheme through a "secret posting process" for account transactions; "knowingly authoriz[es] later transactions that it allows to consume available funds" held for previously authorized transactions; and "willfully engage[s] in the improper assessment of" overdraft fees. (Am. Compl. ¶¶ 2, 5, 21, 38, 60, 113; *see also* Am. Compl. ¶¶ 13, 45, 48, 49, 111.) In addition, the amended complaint alleges that the contracts at issue are adhesion contracts, that the imposition of overdraft fees in these circumstances are contrary to the expectation of ordinary consumers, and that overdraft processes similar or identical to Allegacy's have been deemed unfair and deceptive by regulatory authorities. (*See* Am. Compl. ¶¶ 19, 21, 67–69.)

27. Viewing these allegations in a light most favorable to Moose, the Court concludes that they suffice to plead aggravating circumstances, particularly given the context of a consumer adhesion contract. At a minimum, the allegations could support an inference that Allegacy used its "power and position" inequitably. *Lake Mary L.P. v. Johnston*, 145 N.C. App. 525, 534 (2001); *see also S. Bldg. Maint., Inc. v. Osborne*, 127 N.C. App. 327, 334 (1997) (allowing section 75-1.1 claim based on breach of contract when defendant "took advantage of [his] position"). In addition, Moose has alleged "deceitful conduct"—such as the alleged secret posting process—to effectuate the purported breach. *Sparrow Sys. v. Priv. Diagnostic Clinic, PLLC*, 2014 NCBC LEXIS 70, at *44–45 (N.C. Super. Ct. Dec. 24, 2014); *see also Becker*, 149 N.C. App. at 794–95 (reversing dismissal of section 75-1.1 claim based on allegedly deceitful conduct to carry out breach of contract); *Lendingtree, LLC v.*

*Intercontinental Cap. Grp., Inc.*, 2017 NCBC LEXIS 54, at *8–10 (N.C. Super. Ct. June 23, 2017) (denying motion to dismiss based on allegation of concealment); *cf. Morris v. Bank of Am., N.A.*, 2019 U.S. Dist. LEXIS 53617, at *9–10 (W.D.N.C. Mar. 29, 2019) (denying motion to dismiss section 75-1.1 claim based on improper assessment of overdraft fees).

28. At this early stage, these allegations are sufficient to defeat a motion to dismiss. The Court therefore denies Allegacy's motion to dismiss the section 75-1.1 claim.

IV.
CONCLUSION

29. For all these reasons, the Court **DENIES** Allegacy's motion to dismiss.


**SO ORDERED**, this the 5th day of May, 2021.


/s/ Adam M. Conrad
Adam M. Conrad
Special Superior Court Judge
 for Complex Business Cases